**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

No. 11-MDL-2210-DIMITROULEAS

IN RE: LISTERINE TOTAL CARE MOUTHWASH
MARKETING AND SALES PRACTICES LITIGATION

This Document Relates to: All Actions
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants McNeil-PPC, Inc., the Johnson and Johnson Healthcare Products Division of McNeil-PPC, Inc., Johnson & Johnson, and Johnson & Johnson Consumer Companies, Inc., respectfully move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the following grounds.

*First*, plaintiffs contend that the statement "fights unsightly plaque above the gum line" on the label for Listerine Total Care Anticavity Mouthwash ("Listerine Total Care") was false in violation of California law because the product's "active ingredient" is sodium fluoride, which prevents cavities but not plaque. As described more fully in the accompanying memorandum, the central premise of plaintiffs' claims – *i.e.*, that Listerine Total Care contains no antiplaque ingredients – is simply incorrect. Listerine Total Care contains eucalyptol, menthol, methyl salicylate and thymol – ingredients that the U.S. Food and Drug Administration ("FDA") considers safe and effective for the prevention of plaque and gingivitis.

*Second*, the efficacy of eucalyptol, menthol, methyl salicylate and thymol in fighting plaque and gingivitis is well-established. The FDA and the scientific community as a whole recognize that this combination of essential oils provides plaque and gingivitis benefits. Plaintiffs' Master Consolidated Complaint does not contest the efficacy of these ingredients, and

plaintiffs have no evidence from which a trier-of-fact could reasonably conclude that they are ineffective.

*Third*, plaintiffs contend that the words "total care" in the product's name are false, reasoning that a mouthwash that contains no antiplaque ingredients cannot provide "total care." Because this contention rests on plaintiffs' incorrect assumption that Listerine Total Care contains no antiplaque ingredients, plaintiffs have no basis to dispute the "total care" name, which is non-actionable puffery in any event.

*Finally*, plaintiffs contend that by putting Listerine Total Care into the stream of commerce, McNeil impliedly represented that Listerine Total has earned FDA approval for all of its claimed benefits.  This claim is an improper attempt at private enforcement of the FDCA, and, for precisely this reason, courts have consistently rejected this theory of liability.

Dated:  August 2, 2011                                Respectfully submitted,


                                                        _s/ Bruce Berman_____

Steven A. Zalesin (*pro hac vice*)          Bruce J. Berman (159280)
Travis J. Tu (*pro hac vice*)                  e-mail: bberman@carltonfields.com
Anthony C. DeCinque  (*pro hac vice*)
Ryan Sirianni (*pro hac vice*)
PATTERSON BELKNAP WEBB                 CARLTON FIELDS, P.A.
& TYLER LLP                                    100 S.E. Second Street, Suite 4200
1133 Avenue of the Americas               Miami, FL 33131
New York, New York  10036
Tel:  212-336-2000                             Tel: 305-350-0050
Fax:  212-336-2222                            Fax: 305-350-0055

                                                        *Attorneys for Defendants*

Of counsel:

Kathryn A. Meisel, Esq.
Johnson & Johnson

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

No. 11-MDL-2210-DIMITROULEAS

IN RE: LISTERINE TOTAL CARE MOUTHWASH
MARKETING AND SALES PRACTICES LITIGATION

This Document Relates to: All Actions
_____/

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Defendants McNeil-PPC, Inc., the Johnson and Johnson Healthcare Products Division of McNeil-PPC, Inc., Johnson & Johnson, and Johnson & Johnson Consumer Companies, Inc. (hereinafter "McNeil")[1] respectfully submit this memorandum in support of McNeil's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Plaintiffs brought suit on the premise that Listerine Total Care Anticavity Mouthwash ("Listerine Total Care") contains no antiplaque ingredients, and does not provide the advertised benefit of fighting "unsightly plaque above the gum line." That hypothesis is wrong. In fact, Listerine Total Care contains eucalyptol, menthol, methyl salicylate and thymol – ingredients that the U.S. Food and Drug Administration ("FDA") considers safe and effective for the prevention of plaque and gingivitis. These ingredients are not identified by name on the product's label by virtue of the FDA's detailed regulations governing the labeling of anticavity mouthwashes. Nevertheless, these proven antiplaque and antigingivitis agents are present in Listerine Total Care at efficacious concentrations.

_____

[1] McNeil-PPC, Inc. is the true party in interest, and "McNeil" is used herein to refer collectively to all defendants named in the plaintiffs' complaints.

After these cases were transferred to this Court by the Judicial Panel for Multi-district Litigation ("MDL Panel"), McNeil voluntarily provided plaintiffs' counsel with the full Listerine Total Care formula, along with clinical studies that demonstrate that Listerine Total Care is effective in combating plaque and gingivitis.  Faced with this evidence, nearly all of the plaintiffs recognized that the facts were "different from what [they] initially believed," and conceded that "no reasonable jury or Judge on summary judgment would find" in their favor.    [DE-44] (6/17/2011 Hearing Tr. at 9:8-12 (statements of S. Davidson, Esq., prior Co-Lead Counsel for Plaintiffs)).

Of the eight cases originally consolidated in this MDL proceeding, five have been voluntarily dismissed with prejudice without any payment by McNeil or negotiated settlement of any kind.  But plaintiffs in the three cases – the *Britton*, *Terrell* and *Seago* actions – have refused to admit that they filed suit on the basis of a mistake.  Summary judgment should be entered against them.  Plaintiffs' erroneous assumptions about the contents of Listerine Total Care are easily disproved, their alternative theories of liability are legally deficient, and there is no evidence from which a trier-of-fact could find in their favor.

## PROCEDURAL BACKGROUND

### A.    McNeil's Motion to Dismiss the *Pelkey* Action

These proceedings began as an individual lawsuit filed on behalf of Nikki Pelkey and a purported class of Florida consumers (the "*Pelkey* action").  Like the other plaintiffs, Pelkey filed suit shortly after the FDA sent a letter to McNeil on September 27, 2010 ("FDA Letter") stating that Listerine Total Care may be "misbranded" under the Federal Food, Drug and Cosmetics Act, 21 U.S.C. §§ 301 *et seq.* (the "FDCA").  Based on a misreading of the FDA Letter, Pelkey alleged that Listerine Total Care cannot "fight unsightly plaque above the gum line" because the

sole "active" ingredient listed on the product's label is sodium fluoride – an ingredient that is proven to prevent cavities but does not fight plaque.

McNeil moved to dismiss the *Pelkey* action, noting that Pelkey was preempted from basing her claims on the "misbranding" issue discussed in the FDA Letter.  *See* [*Pelkey* Dkt. (Case 0:10-cv-61853-CIV-DIMITROULEAS) #28].  McNeil also asked the Court to take judicial notice of the Listerine Total Care formula, which shows that, in addition to sodium fluoride, the product contains eucalyptol, menthol, methyl salicylate and thymol – ingredients with well-established antiplaque and antigingivitis properties.

The Court granted McNeil's motion to dismiss Pelkey's "misbranding" claims based on the technical labeling issues identified in the FDA Letter.  *Pelkey v. McNeil Consumer Healthcare*, 2011 WL 677424, at *7 (S.D. Fla. Feb. 16, 2010).  The Court held that these regulatory matters could not serve as the basis for Pelkey's claims because only the FDA has authority to enforce the FDCA.[2]  *Id.* at *4 ("the FDCA does not create a private right of action"). However, the Court declined to take judicial notice of the Listerine Total Care formula.  *Id.* at *3.  The Court ruled that Pelkey's complaint could not be dismissed in its entirety "at this time" because a determination of the product's contents is "better left to a later stage in the litigation when the record has been developed and the Court can fully and properly consider matters outside of the four corners of the Complaint."  *Id.*

**B.     Consolidation and The Court's Scheduling Order No. 1**

In March 2011, the MDL Panel transferred seven cases that raised factual and legal issues in common with the *Pelkey* action to this Court for consolidation as an MDL proceeding.  At an Initial Status Conference held April 1, 2011, McNeil informed the Court that one issue would

---

[2] The Court also held that Pelkey had abandoned her "misbranding" claim because, in opposing the motion to dismiss, Pelkey disclaimed any intention to sue over the FDA Letter or its contents.

likely be dispositive of all of the transferee plaintiffs' claims – namely, whether Listerine Total Care, in fact, contains ingredients that provide antiplaque and antigingivitis benefits. [DE-66] (4/1/11 Hearing Tr. at 9:23-10:13). None of the plaintiffs' counsel at the hearing disagreed with McNeil's assessment. *Id.* at 12:3-18.

The Court thus adopted a bifurcated discovery plan and entered a Pretrial Order designed to quickly put this dispositive issue before the Court. [DE-21] at 7-8. The Pretrial Order invited McNeil to file an early motion for summary judgment and stayed class and merits discovery, with the exception of limited discovery "as to whether Listerine Total Care 'fights unsightly plaque above the gum line' and promotes healthy gums." *Id.* at 7.

### C.    Plaintiffs Concede That Their Claims Have No Merit

Shortly thereafter, McNeil voluntarily produced to plaintiffs the Listerine Total Care formula along with clinical studies that demonstrate that Listerine Total Care provides plaque and gingivitis benefits.[3] With the exception of counsel for the *Britton* plaintiffs, everyone who reviewed these materials concluded that they rendered plaintiffs' allegations meritless. Co-Lead Counsel for Plaintiffs[4] entered into negotiations with McNeil to compromise the plaintiffs' claims, and each plaintiff – again, with the exception of the *Britton* plaintiffs – executed a stipulation that expressly acknowledged that "they couldn't successfully oppose summary

---

[3] Copies of the Listerine Total Care formula and clinical studies previously produced to plaintiffs are submitted in support of this motion and attached to the accompanying Declaration of Dr. Josh Ghaim, Vice President Oral Healthcare Research, Development & Engineering for Johnson & Johnson Consumer & Personal Products Worldwide.

[4] The Court originally appointed Robbins Geller Rudman & Dowd, counsel for Pelkey, and Blood Hurst & O'Reardon LLP, counsel in the *Evoy* action transferred from the District of New Jersey, to serve as Plaintiffs' Co-Lead Counsel.

judgment based upon the information they have now seen and learned."[5]   [DE-44] (6/17/11 Hearing Tr. at 3:9-12).

  After weeks of negotiations, Co-Lead Counsel for Plaintiffs notified the Court that a global settlement had been reached.  [DE-28].  However, as is already a matter of record in this action, the *Britton* plaintiffs ultimately rejected and thwarted the global settlement.  McNeil declined to settle the cases, even for their "nuisance" value, once it became clear that it would be put to the burden and expense of obtaining summary judgment against a subset of plaintiffs. [DE-44] (6/17/11 Hearing Tr. at 5:24-6:13).

   **D.**  **Plaintiffs Voluntarily Dismiss Their Claims With Prejudice**

  Though no settlement was reached and no consideration of any kind was paid or promised, plaintiffs in five of the actions proceeded to dismiss their claims with prejudice, and Co-Lead Counsel for Plaintiffs withdrew from their leadership role.  Co-Lead Counsel explained that they simply could not proceed with their cases "while at the same time ensuring they meet the ethical standards to which they adhere." [DE-45] at ¶ 11.  The Court terminated the *Pelkey*, *Evoy*, *Duca*, *Szamet* and *Knowlton* actions, and appointed counsel for the *Britton* plaintiffs as replacement Lead Counsel.  To date, the *Terrell* and *Seago* plaintiffs have not sought to voluntarily dismiss their cases, notwithstanding their previous acknowledgement that their claims lack merit and cannot survive summary judgment.  [DE-44] (6/17/2011 Hearing Tr. at 3:9-17).

---

[5] The stipulation of the *Evoy* plaintiff was previously was submitted to the Court as an example.  [DE-59-1]

## STATEMENT OF UNDISPUTED FACTS

**A.  Listerine Total Care Contains The Same Antiplaque and
Antigingivitis Agents as Listerine Antiseptic**

1.     Listerine Antiseptic mouthwash has been sold in the United States for over 100 years and is widely used to prevent plaque and gingivitis.  (Ghaim Decl. at ¶ 21); *see also* Stoeken, J., et al., *The Long-Term Effect of a Mouthrinse Containing Essential Oils on Dental Plaque and Gingivitis:  A Systematic Review*, 78 J. Periodontol. 7 (2007), at 1219 ("It has been used by millions of consumers, particularly in the United States.") (Ghaim Decl. Exh. I).

2.     The active ingredients in Listerine Antiseptic are four essential oils – eucalyptol, menthol, methyl salicylate, and thymol – that have complex antimicrobial properties.  (Ghaim Decl. at ¶¶ 19-20); *see also* Stoeken, J., *The Long-Term Effect of a Mouthrinse Containing Essential Oils on Dental Plaque and Gingivitis*, supra at 1219 ("The mechanisms of action of [essential oils] against bacteria are complex.") (Ghaim Decl. Exh. I).

3.     This specific combination of ingredients is recognized by FDA as safe and effective for use in the control of gingivitis and plaque.  (Ghaim Decl. at ¶¶ 25-30); *see also* FDA Advanced Notice of Proposed Rulemaking, Oral Health Care Drug Products for Over-the-Counter Human Use, 68 Fed. Reg. 32232, 32239 (May 29, 2003) (hereinafter the "Antiplaque Monograph") (Ghaim Decl. Exh. E).

4.     Listerine Total Care was introduced in the U.S. in February 2009.  (Ghaim Decl. at ¶ 15).

5.     Listerine Total Care provides the plaque and gingivitis benefits of Listerine Antiseptic, as well as added fluoride to help fight cavities.  It contains the same antiplaque and antigingivitis ingredients as Listerine Antiseptic.   In addition, Listerine Total Care contains sodium fluoride for cavity prevention.  (Ghaim Decl. at ¶¶ 16-20).

**B.    The Listerine Total Care Label Is Governed By FDA Regulations Specific to Anticavity Drugs**

6.    Anticavity mouthwashes such as Listerine Total Care are classified by FDA as drugs, and their labels are governed by an FDA "monograph" specific to anticavity products.[6] *See* FDA Final Monograph, Anticaries Drug Products for Over-the-Counter Human Use, 60 Fed. Reg. 52474, 52508 (Oct. 6, 1995) (hereinafter the "Anticavity Monograph") (Ghaim Decl. Exh. O).

7.    By statute, a drug is a product "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" or to "affect the structure or any function of the human body." 21 U.S.C. § 321(g)(1)(B) & (C).  Listerine Total Care is classified as a drug because it is intended to prevent dental caries (*i.e.*, tooth decay) responsible for cavities.  (Ghaim Decl. at ¶ 22).

8.    The terms "active ingredient" and "inactive ingredient" are regulatory terms of art.  *See POM Wonderful, LLC v. Tropicana Prods., Inc.*, 2010 WL 3590162, at *2 (C.D. Cal. Sept. 7, 2010) ("'active' and 'inactive' ingredients are essentially terms of art defined by the FDA").  As an anticavity drug, Listerine Total Care must bear a label that lists sodium fluoride, the ingredient responsible for its anticavity benefit, as its active ingredient.  21 C.F.R. § 201.66(b)(2) & (c)(2).  All other ingredients in Listerine Total Care must be labeled as inactive. 21 C.F.R. § 201.66(b)(8) & (c)(8).

9.    The Listerine Total Care label, therefore, must identify eucalyptol, menthol,

---

[6] An FDA monograph "is a kind of 'recipe book' covering acceptable ingredients, doses, formulations, labeling, and, in some cases, testing parameters."  *See* FDA, How Drugs are Developed and Approved, *available at* http://www.fda.gov/drugs/developmentapprovalprocess/howdrugsaredevelopedandapproved/ default.htm.  Among other things, an FDA monograph specifies how a covered drug must be labeled.  *See In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 362 (E.D.N.Y. 2010).  "Once a final monograph goes into effect, it is illegal to sell a drug described therein unless it conforms therewith."  *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.,* 902 F.2d 222, 226 (3d Cir. 1990).

methyl salicylate and thymol as inactive ingredients.  (Ghaim Decl. at ¶¶ 22-23).

10.     On the product's label, these essential oils are appropriately listed as "flavors" among the product's inactive ingredients.  (Ghaim Decl. at ¶ 23).

11.     So-called "inactive" ingredients frequently contribute to a product's efficacy or confer a benefit.  *See Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230 (3d Cir. 1990) (finding no contradiction in advertiser's position that its medicine worked as soon as swallowed due to an "inactive" ingredient).

12.     Listerine Total Care is no exception.  Listerine Total Care contains eucalyptol, menthol, methyl salicylate and thymol – highly effective anti-plaque and anti-gingivitis agents. (Ghaim Decl. at ¶ 24).

### C.     Listerine Total Care "Fights Unsightly Plaque Above the Gum Line"

13.     Listerine Total Care is also a cosmetic.  (Ghaim Decl. at ¶¶ 48-50).

14.     A cosmetic is a product intended to be "rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied" for "cleansing, beautifying, promoting attractiveness, or altering the appearance."  21 U.S.C. § 321(i)(1).

15.     Listerine Total Care is a cosmetic because it is intended to "cleanse" teeth by removing "unsightly" plaque.  (Ghaim Decl. at ¶¶ 48-50).

16.     Numerous products have both drug and cosmetic uses.  As FDA explains on its website:

> Some products meet the definitions of both cosmetics and drugs. This may happen when a product has two intended uses.  For example, a shampoo is a cosmetic because its intended use is to cleanse the hair.  An antidandruff treatment is a drug because its intended use is to treat dandruff. . . .
>
> Among other cosmetic/drug combinations are ***toothpastes that contain fluoride***, deodorants that are also antiperspirants, and moisturizers and makeup marketed with sun-protection claims.

- 8 -

*See generally* FDA Guidance, Is It a Cosmetic, a Drug, or Both? (July 8, 2002), *available at* http://www.fda.gov/Cosmetics/GuidanceComplianceRegulatoryInformation/ucm074201.htm (emphasis added). [7]

17.     Plaque is a layer of bacteria or "biofilm" on the surface of teeth.  If allowed to accumulate, plaque can become visible or "unsightly."   (Ghaim Decl. at ¶ 49); *see generally* Antiplaque Monograph, 68 Fed. Reg. 32232 at 32235-36 (explaining how plaque initially "adheres to teeth and other surfaces in the oral cavity" and builds over time to form visible "calculus").

18.     The essential oils contained in Listerine Total Care provide a cosmetic benefit by helping prevent plaque from building up to the point of becoming "unsightly."  (Ghaim Decl. at ¶¶ 48-50).  Thus, like the "toothpaste with fluoride" example provided by the FDA, Listerine Total Care is a drug for cavity prevention and a cosmetic for other purposes, including the prevention of unsightly plaque.

    **D.     The FDA Letter**

19.     On September 27, 2010, McNeil received a letter from the FDA concerning the "fights unsightly plaque above the gum line" claim on the Listerine Total Care label.  (Ghaim Decl. Exh. N).

20.     Though it was phrased as a cosmetic claim about "unsightly" plaque, according to the FDA Letter, the statement "fights unsightly plaque above the gum line" could instead be viewed as a therapeutic "drug" claim.  *Id.*

---

[7] *See also* FDA Guidance for Industry: Labeling OTC Human Drug Products (May 2009), at p. 4, *available at* http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/ Guidances/UCM150994.pdf ("For OTC drug products that contain both drug and cosmetic ingredients, the drug ingredients are considered the active ingredients, and the cosmetic ingredients are considered the inactive ingredients.").

21.     As previously discussed, FDA regulations require manufacturers to list ingredients responsible for any therapeutic drug benefits as "active ingredients."  No antiplaque ingredients are listed as active ingredients on the Listerine Total Care label.  The FDA Letter therefore advised McNeil that the product may be "misbranded" under the FDCA.  *Id.*

22.     Though it disagreed, McNeil voluntarily modified the "fights unsightly plaque above the gum line" statement in response to the FDA Letter.[8]  (Ghaim Decl. at ¶¶ 51-54).

23.     FDA promptly closed the matter.  (Ghaim Decl. ¶ 53); *see also* Close Out Letter to Johnson & Johnson Consumer Products, Inc. (dated Nov. 13, 2010) (Ghaim Decl. Exh. P).

## PLAINTIFFS' MASTER COMPLAINT

On July 12, 2011, new Lead Counsel for Plaintiffs served a Master Consolidated Complaint ("Complaint") setting forth the plaintiffs' combined allegations.  The allegations of the Complaint boil down to the following syllogism:  (1) the "sole active ingredient listed for Listerine Total Care is sodium fluoride" (Cmplt. ¶ 19), (2) sodium fluoride does not fight plaque (Cmplt. ¶ 35), and (3) therefore, "Listerine Total Care does not effectively fight plaque above the gum line." (Cmplt. ¶ 21).  *See also* (Cmplt. ¶¶ 93-94:  Listerine Total Care is incapable of "providing consumers with plaque-fighting properties" because "it contains a sole active ingredient not proven effective for [plaque].").

The Complaint also takes issue with the words "total care" in the Listerine Total Care name.  According to plaintiffs, Listerine Total Care cannot "provide total oral healthcare" because it is not "an effective means of fighting plaque."  (Cmplt. ¶ 50).

Lastly, the Complaint alleges that by placing Listerine Total Care "into the stream of commerce" and "marketing it as a drug," McNeil "necessarily represented to consumers that the

---

[8] The statement was replaced with the cosmetic claim "cleans the whole mouth."  (Ghaim. Decl. at ¶ 53 and Exh. D).

product had the approval of the Food and Drug Administration." (Cmplt. ¶ 22). According to the Complaint, this purportedly implied message of "FDA approval" (*Id.*) is false because Listerine Total Care is "not approved as an effective means of fighting plaque."[9] (Cmplt. ¶ 50).

On the basis of these allegations, plaintiffs assert claims under California law on behalf of themselves, a purported class of California purchasers of Listerine Total Care, and another purported class of all Listerine Total Care purchasers in the United States. Every one of the plaintiffs' claims rests on an allegation that Listerine Total Care cannot fight plaque, does not provide "total care," or is not FDA-approved to prevent plaque. (Cmplt. ¶¶ 32-33, 42-43, 54-55, 60, 67, 77, 93-94, 99, 108-109, 112).

## ARGUMENT

Summary judgment is appropriate unless the non-moving party can point to "specific facts" in the record "showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, if "the non-moving party fails to offer evidence from which a reasonable jury could return a verdict in its favor," summary judgment should be granted. *Id.*

Applying these standards here, McNeil is entitled to summary judgment as a matter of law. First, the factual record establishes that, contrary to plaintiffs' mistaken premise, Listerine Total Care contains proven antiplaque ingredients. Second, the efficacy of these ingredients is recognized by FDA and the scientific community as a whole, and plaintiffs have no evidence to

---

[9] In the now-dismissed *Pelkey* action, Pelkey alleged that the label and advertising for Listerine Total Care conveyed an implied message that Listerine Total Care promotes healthy gums. The recently-filed Master Complaint makes no such allegation.

challenge this widespread consensus.  Third, there is nothing false or misleading about the words "total care" in the Listerine Total Care name, which are non-actionable puffery in any event. Finally, plaintiffs' claim that McNeil impliedly represented that Listerine Total has earned FDA approval for all of its claimed benefits is an improper attempt at private enforcement of the FDCA, and must be dismissed.

## I.    LISTERINE TOTAL CARE CONTAINS ANTIPLAQUE INGREDIENTS

Plaintiffs allege that it is false to claim that Listerine Total Care "fights unsightly plaque above the gum line" because the product contains no antiplaque ingredients.  Plaintiffs are, quite simply, mistaken.  The Listerine Total Care formula is submitted in support of this motion with a sworn declaration as to its authenticity.  (Ghaim Decl. ¶ 16 and Exh. B).  It shows that the product contains eucalyptol, menthol, methyl salicylate and thymol, the same antiplaque and antigingivitis ingredients found in Listerine Antiseptic.  (Ghaim Decl. at ¶¶ 20, 55).

Plaintiffs' assumption that Listerine Total Care cannot fight plaque because its sole "active" ingredient is sodium fluoride is misguided.  Listerine Total Care is classified for regulatory purposes as an anticavity drug, and its anticavity benefit is supplied by sodium fluoride.  Thus, under FDA's labeling rules, the "active" ingredient in Listerine Total Care is sodium fluoride.  *See* 21 C.F.R. § 201.66(b)(2) & (c)(2).  All of the other ingredients in Listerine Total Care – including eucalyptol, menthol, methyl salicylate and thymol – must be labeled as "inactive" ingredients.  21 C.F.R. § 201.66(b)(8) & (c)(8).  Because the essential oils in Listerine Total Care are listed among the inactive ingredients as "flavors," it may not be readily apparent from the product label that Listerine Total Care is formulated to "fight unsightly plaque above the gum line."  The full Listerine Total Care formula, however, puts this issue to rest.

At the motion to dismiss stage, the Court declined to take judicial notice of the Listerine Total Care formula and held that McNeil was not entitled to a judgment in its favor "at [that]

time." *Pelkey*, 2011 WL 677424, at *3.  No such procedural impediment exists on a motion for summary judgment.  The formula shows that Listerine Total Care, in fact, contains antiplaque and antigingivitis agents.  McNeil's motion for summary judgment should be granted for this reason alone.

## II.     PLAINTIFFS CANNOT RAISE A MATERIAL ISSUE AS TO THE EFFICACY OF THE ANTIPLAQUE INGREDIENTS IN LISTERINE TOTAL CARE

Plaintiffs do not dispute the efficacy of eucalyptol, menthol, methyl salicylate and thymol in preventing plaque or gingivitis.  Rather, the Master Complaint alleges that Listerine Total Care is incapable of providing plaque benefits because its sole active ingredient, sodium fluoride, does not fight plaque.  (Cmplt. ¶ 35:  "The sole active ingredient of the mouthwash is listed as 'sodium fluoride 0.0221%' - an ingredient which has not been shown to fight or prevent plaque.").  Because the Complaint contains no allegation that the essential oils in Listerine Total Care are ineffective, plaintiffs should be foreclosed from advancing that argument in opposition to summary judgment.  *See Sands v. Key West Housing Authority*, 2007 WL 1412943, at *4 (S.D. Fla. May 10, 2007) (collecting cases recognizing that a complaint cannot be amended by raising new arguments in opposition to summary judgment).

In any event, the benefits of eucalyptol, menthol, methyl salicylate and thymol in combatting plaque and gingivitis are well-established.  In 1998, FDA empaneled a committee of experts to determine which products FDA should recognize as safe and effective for the prevention of plaque and gingivitis.  The committee conducted an exhaustive review of the scientific evidence, including seven randomized, placebo-controlled clinical trials that evaluated the efficacy of eucalyptol, menthol, methyl salicylate and thymol containing mouthwashes.  Antiplaque Monograph at p. 32252-55.  "Based on the data" considered, the FDA's committee

determined that a mouthwash containing this combination of ingredients is "safe and effective as an OTC antigingivitis/antiplaque agent." *Id.* at p. 32256.

FDA has adhered to this position ever since, and its judgments on scientific matters within the scope of its expertise are entitled to deference. *See Henley v. Food & Drug Admin.,* 77 F.3d 616, 621 (2d Cir. 1996) (deferring to FDA's findings because FDA "possesses the requisite know-how to conduct such analyses, by sifting through the scientific evidence to determine the most accurate and up-to-date information regarding a particular drug, and how those data affect human usage"); *Rempfer v. Von Eschenbach*, 535 F. Supp. 2d 99, 107 (D.D.C. 2008) ("The FDA's judgments regarding efficacy fall within the FDA's expertise and thus such judgments merit deference from the courts."); *Graceway Pharm., Inc. v. Sebelius*, --- F. Supp. 2d ---, 2011 WL 1753801, at *6 (D.D.C. May 10, 2011) ("[T]he FDA's evaluations of scientific data within its area of expertise are entitled to a high level of deference."); *see also In re Human Tissue Prods. Liability Litig.*, 488 F. Supp. 2d 430, 432 (D.N.J. 2007) (recognizing that FDA has "primary jurisdiction" over issues within its core competence).

Importantly, the essential oils contained in Listerine Total Care are present in concentrations that the FDA considers safe and effective in combatting plaque and gingivitis. The FDA's scientific experts have "conclude[d] that a combination of essential oils consisting of eucalyptol (0.092 percent), menthol (0.042 percent), methyl salicylate (0.060 percent), and thymol (0.064 percent) . . . in a mouthrinse is safe and effective as an [over-the-counter] antigingivits/ antiplaque agent."  Antiplaque Monograph at 32252.  Listerine Total Care contains these essential oils at concentrations at, or above, these efficacious levels.  (Ghaim Decl. at ¶¶ 24, 30, 55).

FDA's view that the ingredients in Listerine Total Care are effective antiplaque and antigingivitis agents is supported by a substantial body of evidence and reflects a widespread consensus within the scientific community.  In 2010, the *Journal of Dentistry* devoted a special issue "to review, and provide an update, on current thinking regrading the use of oral mouthrinses, including microbiological and clinical evidence to support their efficacy."  (Ghaim Decl. Exh. F).  According to multiple authors, the antiplaque and antigingivitis benefits of mouthwashes containing essential oils are firmly established.[10]  *See* Gensolley, J., *Clinical efficacy of antimicrobial mouthrinses*, Journal of Dentistry 38, SI (2010) (concluding, based on a comprehensive review of the "large group of studies evaluating essential oils as an active agent in mouthrinses," there is "strong evidence" that essential oils are "effective agents") (Ghaim Decl. Exh. H); Fine, D., *Listerine: past, present and future*, Journal of Dentistry 38, SI (2010), at p. S3 (noting that, of the "21 studies of 6 months or greater" involving Listerine mouthwashes, "over 95%" showed "20% or greater reduction in plaque and gingivitis") (Ghaim Decl. Exh. G).

Moreover, McNeil has confirmed the efficacy of Listerine Total Care in two clinical trials.  The first study was a two-week trial conducted according to an established protocol for assessing the antiplaque and antigingivitis efficacy of new mouthwash formulations.[11]  *See* Antiplaque Monograph at p. 32240 (recognizing the validity of the test protocol that McNeil employed).  During the two-week trial, subjects used Listerine Total Care but engaged in no

---

[10] Other published research also supports this conclusion.  *See, e.g.,* Stoeken, J., et al., *The Long-Term Effect of a Mouthrinse Containing Essential Oils on Dental Plaque and Gingivitis: A Systemic Review*, 78 J. Periodontol. 7 (2007), at 1227 ("When used as an adjunct to unsupervised oral hygiene, the existing evidence supports that [an essential oil mouthwash] provides an additional benefit with regard to plaque and gingivitis reduction compared to a placebo or control.") (Ghaim Decl. Exh. I).

[11] This protocol was first developed in 1965 when researchers discovered that subjects who engage in no oral hygiene typically develop gingivitis in only a few weeks.  *See* Amini, P., et al., *Comparative antiplaque and antigingivitis efficacy of three antiseptic mouthrinses: a two week randomized clinical trial*, Braz. Oral. Res. 23(3):319-25 (2009) (noting that this short-term protocol has "been accepted as a valid model") (Ghaim Decl. Exh. L).

other oral hygiene such as brushing or flossing.  The study found that Listerine Total Care provides plaque and gingivitis benefits that a placebo mouthwash does not, and that Listerine Total Care is comparable in efficacy to Listerine Antiseptic.  (Ghaim Decl. Exh. J).

In a second study, McNeil evaluated the efficacy of Listerine Total Care over six months, and subjects used the product as a compliment to normal brushing.[12]  The study was randomized, placebo-controlled and conducted under examiner-blind conditions.  After three months of use, and again after six months, subjects who used Listerine Total Care had significantly less plaque and gingivitis than subjects who used a placebo mouthwash.  (Ghaim Decl. Exh. K).

In sum, there is overwhelming evidence that the specific combination of essential oils in Listerine Total Care fights plaque and gingivitis.  Plaintiffs can point to no evidence from which a trier-of-fact could conclude otherwise.

## III. PLAINTIFFS HAVE NO VIABLE CLAIM AGAINST THE WORDS "TOTAL CARE"

Plaintiffs also allege that the words "total care" in the product's name are false, reasoning that a mouthwash that contains no antiplaque ingredients cannot provide "total care."  But plaintiffs' premise – that Listerine Total Care contains no antiplaque ingredients – is incorrect. Since Listerine Total Care does, in fact, contain ingredients that fight plaque and gingivitis, plaintiffs' challenge to the Listerine Total Care name should be rejected out of hand.

Moreover, plaintiffs' attack on the words "total care" suffers from a more fundamental flaw.  Words like "total" and "complete" – which are routinely used in connection with products that provide multiple benefits, nutrients or features[13] – constitute non-actionable commercial

---

[12] This study has been accepted for publication in a peer-reviewed journal.  (Ghaim Decl. ¶ 45).

[13] A search of the federal government's database of registered trademarks turns up hundreds of consumer goods with "total" in their name.  *See* http://tess2.uspto.gov (last accessed July 29, 2011) (yielding 827 trademarks for goods containing "total").  Indeed, in the aisles of their local drug store, consumers will find numerous "total" or "complete" products that offer varying combinations of benefits, including

puffery.  *See Cook Perkiss & Liehe v. N.C. Collection Serv.*, 911 F.2d 242, 245 (9th Cir. 1990); *see also Rexall Sundown, Imc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 10 (E.D.N.Y. 2009) ("Whether an alleged misrepresentation is an actionable statement of fact or mere puffery is a matter of law." ).

Puffery has no single definition.  At various times, courts have described puffery as a statement "expressed in broad, vague, and commendatory language," *Castrol Inc. v. Pennzoil Co.*, 907 F.2d 939, 945 (3d Cir. 1993), "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion," *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000), or an "exaggerated, blustering, and boasting statement upon which no reasonable buyer would rely," *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).

Regardless of how puffery is defined, vague and generalized promotional claims or product names like "total care" have consistently been deemed non-actionable.  *See, e.g., Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) (whether a sports drink is "complete" cannot be proven true or false so "complete" is puffery); *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106-07 (10th Cir. 2009) ("We'll take care of everything else." is puffery); *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1008-09 (7th Cir. 2004) ("high quality care"); *In re Ford Motor Co. E-350 Van Products Liability Litig. (No. II)*, 2010 WL 2813788, *8 (D.N.J. July 9, 2010) ("America's Most Trustworthy").

For these reasons, plaintiffs have no viable claims against the "total care" name.

---

COLGATE TOTAL (U.S. TM Reg. No. 3858228), RIGHT GUARD TOTAL DEFENSE (U.S. TM Ser. No. 85047549), TOTAL BEAUTY (U.S. TM. Reg. No. 2080574.), TOTAL HYDRATION (U.S. TM Ser. No. 85190991), and TOTAL RESTORE (U.S. TM. Ser. No. 77681056).

IV.    **PLAINTIFFS CANNOT BASE THEIR CLAIMS ON AN ALLEGEDLY IMPLIED MESSAGE OF FDA APPROVAL**

Plaintiffs' final contention is that, by putting Listerine Total Care "into the stream of commerce," McNeil "necessarily represented" that Listerine Total Care is FDA-approved for all of the benefits stated on the product's label.  (Cmplt. ¶ 22).  Courts have consistently rejected this theory of liability.  *See Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 417 (S.D.N.Y. 2006) ("False advertising claims based on allegations of implied governmental approval have not been allowed.").

Pursuant to the FDCA, the FDA has primary jurisdiction to decide whether a product is a drug and what types of approvals, if any, a product must receive before it can be marketed.  *See Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1376-77 (9th Cir. 1983); *see also Healthpoint, Ltd. v. Stratus Pharms., Inc.*, 273 F. Supp. 2d 769, 799 (W.D. Tex. 2001) ("it is for the FDA" to determine whether products were lawfully on the market).  Therefore, as this Court previously held in granting (in relevant part) McNeil's motion to dismiss the *Pelkey* action, private plaintiffs are precluded from asserting claims under state law that would require a court to determine whether a product has been improperly marketed as a drug.  *See Pelkey*, 2011 WL 677424, at *4 ("the FDCA does not create a private right of action"); *see also Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009) ("when the state claim would not exist if the FDCA did not exist," it is precluded.)  The same reasoning is applicable here.

Plaintiffs cannot get around the prohibition against private enforcement of the FDCA by alleging that McNeil "necessarily represented" that Listerine Total Care has earned FDA approval for all of its advertised benefits.  In *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993), the Fourth Circuit held that plaintiffs in false advertising cases cannot allege "that the very act of placing a drug on the market . . . somehow implies (falsely) that the drug has been"

FDA approved.  7 F.3d at 1139.  The court recognized that it would be impossible to adjudicate whether a purported message of FDA approval has been implied, or whether that implied message is true or false, without invading the FDA's exclusive jurisdiction.  *Id.*  Indeed, if plaintiffs were permitted to pursue claims on a theory of implied FDA approval, they would in effect have a backdoor "vehicle by which to enforce the Food, Drug, and Cosmetic Act."  *Id.*

Following the *Mylan Labs* decision, courts have consistently held that false advertising claims premised on an allegedly implied message of FDA approval are "too great a stretch."  *Id.*; *Inmuno Vital, Inc. v. Golden Sun, Inc.*, 49 F. Supp. 2d 1344, 1359 (S.D. Fla. 1997) (same); *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 478 (D.N.J. 1998) (dismissing claims "based on allegations that defendants falsely implied or represented that they properly obtained FDA approval of their drug products"); *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, 1997 WL 94237, at *7 (D. Kan. 1997) (dismissing claims because "the crux" of plaintiffs' argument was "defendants' failure to receive FDA approval under the FDCA.").  Of particular relevance to this case, the holding of *Mylan Labs* has been applied to bar claims under California law.  *See In re Epogen and Aranesp Off-Label Marketing and Sales Practices Litig.*, 2009 WL 1703285, at *5 (C.D. Cal. 2009) (plaintiffs cannot "shoehorn" their FDCA allegations into state consumer fraud cases); *Summit Tech., Inc. v. High-Line Medical Instruments, Co.*, 933 F. Supp. 918, 932-34, 943 & n.21 (C.D. Cal. 1996) (state law claims are preempted when based on allegation that seller "failed to reveal" product was not FDA approved).

The concerns cited by the Fourth Circuit in *Mylan Labs* are particularly acute in this case. Plaintiffs allege that McNeil put Listerine Total Care into the stream of commerce, promoted it like a drug, and thereby "necessarily implied" that FDA has given approval for all of the benefits stated on the label.  In point of fact, FDA has recognized that sodium fluoride is effective for

cavity prevention, and that the combination of essential oils in Listerine Total Care is effective against plaque.  In addition, FDA "approval" is not required where, as here, the only antiplaque claim made for the product has been cosmetic (as opposed to therapeutic) in nature ("fights unsightly plaque above the gum line").  To adjudicate plaintiffs' claim of implied FDA approval, the Court would have to decide whether McNeil's promotional statements regarding "unsightly plaque" constituted a cosmetic claim (for which FDA approval is not required) or a therapeutic "drug" claim (for which FDA approval is needed).  That is just another way of articulating the "misbranding" claim that this Court dismissed in the *Pelkey* action.  The result should be no different here.

## CONCLUSION

For all of the foregoing reasons, McNeil respectfully requests that the Court grant its motion for summary judgment.

Dated:  August 2, 2011

Respectfully submitted,

___*s/ Bruce Berman*_____

| | |
|---|---|
| Steven A. Zalesin (*pro hac vice*) | Bruce J. Berman (159280) |
| Travis J. Tu (*pro hac vice*) | e-mail: bberman@carltonfields.com |
| Anthony C. DeCinque  (*pro hac vice*) | |
| Ryan Sirianni (*pro hac vice*) | |
| PATTERSON BELKNAP WEBB | CARLTON FIELDS, P.A. |
| & TYLER LLP | 100 S.E. Second Street, Suite 4200 |
| 1133 Avenue of the Americas | Miami, FL 33131 |
| New York, New York  10036 | |
| Tel:  212-336-2000 | Tel: 305-350-0050 |
| Fax:  212-336-2222 | Fax: 305-350-0055 |
| | |
| | *Attorneys for Defendants* |

Of counsel:
Kathryn A. Meisel, Esq.
Johnson & Johnson

-20-