UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 11-MDL-2210-DIMITROULEAS

IN RE: LISTERINE TOTAL CARE MOUTHWASH
MARKETING AND SALES PRACTICES LITIGATION

This Document Relates to: All Actions

_____/

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Itak Moradi and Kathy Pahigian ("Plaintiffs"), by and through their counsel of record, Scott Cole & Associates, APC ("SCA"), hereby submit their Opposition to Defendants McNeil-PPC, Inc., Johnson & Johnson, and Johnson & Johnson Consumer Companies, Inc.'s Motion for Summary Judgment ("MSJ").

I.      INTRODUCTION AND STATEMENT OF FACTS

This action was originally comprised of eight related cases against Defendants Johnson & Johnson, McNeil-PPC, Inc. and various related entities regarding the advertising of Listerine Total Care mouthwash. To date, all of the non-California Plaintiffs have voluntarily dismissed their cases.[1] Now, the only plaintiff parties remaining are the *Britton* Plaintiffs and Plaintiff Eric Terrell.[2] Of the ten claims for relief collectively alleged by the Master Consolidated Complaint, four of the claims arise under California statutes, including, *inter alia*, the California Consumer Legal Remedies Act, Unfair Competition Act and Song-Beverly Consumer Warranty Act. Each

---

[1] *See Dckt. Nos.* 55 (*Pelkey* Plaintiffs' Stipulated Notice of Dismissal), 56 (*Evoy* Plaintiffs' Stipulated Notice of Dismissal), 57 (*Duca* Plaintiffs' Stipulated Notice of Dismissal), 60 (*Knowlton* Plaintiffs' Stipulated Notice of Dismissal), 61 (*Szamet* Plaintiffs' Notice of Dismissal) and 75 (*Seago* Plaintiff's Stipulated Notice of Dismissal).
[2] *See Terrell v. Johnson & Johnson, McNeil-PPC, Inc., Johnson & Johnson Consumer Products, Inc.,* Case No. C11-60908, transferred in on April 27, 2010.

of the three Plaintiffs viewed advertisements in California and purchased Listerine Total Care mouthwash based thereon. Compl. ¶¶ 24-26.

The only discovery exchanged thus far is a small, self-serving document production that Defendants provided to Plaintiffs in anticipation of early settlement. DeSario Decl., Ex. A. Indeed, this paucity of discovery is showcased by Defendants' MSJ, which grossly misconstrues Plaintiffs' claims, thereby failing to resolve multiple issues of material fact or to prove that Defendants are entitled to judgment as a matter of law. In fact, notwithstanding the myriad theories pushed forth in the MSJ, the actual dispute in this case concerns Listerine Total Care's ("LTC") ability to remove plaque above the gum line. In a nationwide marketing campaign, Defendants claimed that LTC can "[r]emove more plaque, and then strengthen teeth for a cleaner, healthier mouth." Compl. ¶ 23b; *see also* MSJ at 8, ¶ 15 ("Listerine Total Care is intended to 'cleanse' teeth by **removing** 'unsightly' plaque.") (emphasis added). Defendants repeatedly bolster their claim that LTC removes plaque in numerous advertisements stating that LTC "Fights Unsightly Plaque Above the Gum Line." MSJ at 1, 8, 9, 12, 16, 20; Compl. ¶¶ 18, 20, 23d; Ghaim Decl., Ex. M. According to Parish Sedghizadeh, Director of the USC Center for Biofilms, in the dental industry, the phrase "fights" plaque means fights *existing* plaque (i.e., *removes* plaque already present on the tooth). Sedghizadeh Decl. at 2. The FDA agrees. Ghaim Decl., Ex. N. ("Based on these labeled claims "Fights Unsightly Plaque Above the Gum Line" and "Prevents Cavities," Listerine Total Care Anticavity Mouthwash is a drug . . . because the product is intended for use in preventing or mitigating disease, or to affect the structure or function of the body, by preventing cavities and **removing plaque**.") (emphasis added). Given these facts, Plaintiffs allege that Defendants repeatedly advertised LTC as a plaque-removing agent. Compl. ¶ 23b.

Although Defendants marketed LTC as an agent to remove plaque, LTC's only active ingredient, sodium fluoride, is incapable of removing plaque. Compl. ¶ 35; *see also* Sedghizadeh Decl. at 1. Defendants' MSJ admits that sodium fluoride is the only active ingredient listed on the LTC label. MSJ at 10, ¶ 21 ("[U]nder FDA's labeling rules, the "active" ingredient in Listerine Total Care is sodium fluoride."). Nonetheless, Defendants argue that LTC removes plaque through its inactive ingredients: a combination of essential oils. MSJ at 13. Despite Defendants' repeated claims that LTC's essential oils "fight," "remove," and are "intended to remov[e]" plaque, those essential oils only prevent plaque build-up; they do not remove it. Sedghizadeh Decl. at 1. According to Dr. Sedghizadeh, LTC's essential oils "are useful only in the transient prevention of plaque build-up," which can be prevented "by using any mouthwash or even swishing with water." Sedghizadeh Decl. at 1. In a book that explores the problems associated with controlling medical biofilm (i.e., plaque), the premier experts in this field note that Listerine is the prime example of a product where the essential oils prevent, but do not remove plaque. DeSario Decl., Ex. B (MEDICAL BIOFILMS: DETECTION, PREVENTION AND CONTROL, 235 (J. Jass, S. Surman and J. Walker eds., John Wiley and Sons Ltd 2003)). In fact, this critique specifically discusses Listerine – "[t]he most well-known member of this [mouthrinse] family is Listerine®, a formulation that has been in use for over 100 years" – and explains that, in Listerine, "[t]he essential oils inhibit plaque formation but do not have a significant effect on existing plaque accumulation." *Id.* In other words, **the essential oils cannot remove plaque**.

In their MSJ, Defendants ignore the distinction between prevention and removal and simply claim that the essential oils are "effective" because they "reduce" plaque build-up. MSJ at 15. The dental industry – and the ordinary consumer for that matter – understands this

distinction. Sedghizadeh Decl. at 1 ("By preventing plaque build-up, the essential oils in Listerine Total Care ultimately "reduce" the amount of plaque accumulated above the gum line transiently, but they are not capable of removing existing plaque – an entirely different matter."). Indeed, Dr. Daniel Fine, Chair of the Department of Oral Biology at the University of Medicine and Dentistry of New Jersey, whose expertise Defendant recognizes in its MSJ[3] – has plainly stated that antibacterial rinses can only "interrupt plaque development on a newly cleaned tooth surface" (i.e., prevent build-up). DeSario Decl., Ex. C (D. H. Fine, *Chemical Agents to Prevent and Regulate Plaque Development*, PERIODONTOLOGY 2000, Vol. 8, at 87 (1995)). **"Removal of newly formed plaque," however, can only "be accomplished by a toothbrush and dental floss."** *Id.* (emphasis added). Dr. Sedghizadeh clarifies the matter further: "Plaque can only be removed through *mechanical debridement* which includes: brushing, flossing, dental scaling or prophylaxis by dentist or dental hygienist using metal scalers and brushes, the use of high power water jets (e.g. Waterpik®), or piezomagnetic/piexoelctric devices (e.g. Cavitron®) used by a dentist or dental hygienist." Sedghizadeh Decl. at 1.

Despite the fact (which Plaintiffs can only assume Defendants dispute) that LTC cannot actually remove plaque, Defendants charged consumers a higher price for LTC than for their regular Listerine Antiseptic,[4] and marketed LTC as a plaque-removal drug. Compl. ¶ 22; Ghaim Decl., Ex. M. Although Defendants charge a premium for the "Total Care" benefits of LTC, they admit that LTC has the same antiplaque ingredients as Listerine Antiseptic (but without its ADA seal of approval[5]). MSJ at 6, ¶ 5 ("[LTC] contains the same antiplaque and antigingivitis ingredients as Listerine Antiseptic."). In support of the "Total Care" name, however, Defendants

---

[3] Dr. Ghaim attaches Dr. Fine's article "Listerine: past, present and future – a test of thyme" and emphasizes Dr. Fine's summary of the Listerine clinical studies (that were partially funded and planned by Defendant) which found that Listerine *reduced* plaque. Ghaim Decl., Ex. G at S4.
[4] DeSario Decl., Ex. D.
[5] *Compare* Ghaim Decl., Ex. C *with* Ghaim Decl., Ex. D.

note that LTC "contains sodium fluoride for cavity prevention." *Id*. Nonetheless, when Defendants released LTC with the added "Total Care" verbiage, they also **added** the claim "fights unsightly plaque above the gum line" on the LTC label (it is *not* on the Listerine Antiseptic label), and repeatedly made the "fights/removes plaque" claim in their advertisements for LTC. Ghaim Decl., Ex. M; Complaint ¶ 18, 23b, 23d. This plaque-specific claim is unrelated to cavity prevention and suggests that consumers will gain additional plaque-removal benefits by investing more money in "Total Care." Compl. ¶¶ 24, 25, 36, 46, 56, 67, 78. Since there is no plaque-removal benefit in LTC at all, Plaintiffs filed this lawsuit to redress Defendants' failure to live up to their advertising claims. Compl. ¶ 15.

## II.      ARGUMENT

### A.      LEGAL STANDARD

Courts view a motion for summary judgment as a "**drastic device**." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir.1999) (citing *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 249 (1985), *cert. denied*, 484 U.S. 918) (emphasis added). Because summary judgment "cuts off a party's right to present his case to the jury," granting such a motion is appropriate only when there are **no** genuine issues as to material facts. *Id.* (emphasis added). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (U.S. 1986). In deciding a motion for summary judgment, a court "must review the record, and all its inferences, in the light most favorable to the nonmoving party." *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1441 (11th Cir. 1998) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962)).

### B.     DISPUTED FACTS

The following material facts remain in dispute:[6]

3. Plaintiffs dispute that LTC's four essential oils have been recognized by the FDA as safe and effective in the removal of plaque. Ghaim Decl., Ex. N. ("Based on these labeled claims "Fights Unsightly Plaque Above the Gum Line" and "Prevents Cavities," Listerine Total Care Anticavity Mouthwash is a drug . . . because the product is intended for use in preventing or mitigating disease, or to affect the structure or function of the body, by preventing cavities and **removing plaque**.") (emphasis added); Sedghizadeh Decl. at 2 ("the FDA's determination that the essential oils in Listerine Total Care are 'safe and effective as an OTC antigingivitis/antiplaque agent' only speaks to the mouthwash's ability to prevent plaque build-up, not its ability to remove plaque."). This fact will affect the question of whether Defendants made false representations to consumers in violation of California's FAL, breached express and/or implied warranties in violation of California's CLRA and Song-Beverly Consumer Warranty Act, and were unjustly enriched from unfair business practices in violation of California's UCL.

7. Plaintiffs dispute that the only reason the FDA classified LTC as a drug is because it is intended to prevent dental caries responsible for cavities. Indeed, the FDA made it clear that LTC was also classified as a drug because it claims to remove plaque. Ghaim Decl., Ex. N ("Based on these labeled claims "Fights Unsightly Plaque Above the Gum Line" and "Prevents Cavities," Listerine Total Care Anticavity Mouthwash is a drug . . . because the product is intended for use in preventing or mitigating disease, or to affect the structure or function of the body, by preventing cavities and **removing plaque**.") (emphasis added). Sedghizadeh Decl. at 2

---

[6] Given that Defendants' MSJ grossly misconstrues Plaintiffs' claims, Plaintiffs only dispute two of the twenty-three "Undisputed Facts" therein (Nos. 3 and 7). Plaintiffs do not dispute Nos. 1, 2, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 or 23.

("the FDA's determination that the essential oils in Listerine Total Care are 'safe and effective as an OTC antigingivitis/antiplaque agent' only speaks to the mouthwash's ability to prevent plaque build-up, not its ability to remove plaque."). This fact will affect the question of whether Defendants made false representations to consumers in violation of California's FAL, breached express and/or implied warranties in violation of California's CLRA and Song-Beverly Consumer Warranty Act, and were unjustly enriched from unfair business practices in violation of California's UCL.

24. Plaintiffs dispute that Listerine Total Care, and specifically its combination of essential oils, is able to remove plaque above the gum line. Compl. ¶ 23b; MSJ at 8, ¶ 15; *see* MEDICAL BIOFILMS: DETECTION, PREVENTION AND CONTROL, *supra*, at 235; Sedghizadeh Decl. at 1 ("the essential oils in Listerine Total Care…are not capable of removing existing plaque"). This fact will affect the question of whether Defendants made false representations to consumers in violation of California's FAL, breached express and/or implied warranties in violation of California's CLRA and Song-Beverly Consumer Warranty Act, and were unjustly enriched from unfair business practices in violation of California's UCL.

25. Plaintiffs dispute that the phrase "fights plaque" means plaque removal and not merely prevention of plaque build-up. Compl. ¶ 21; Sedghizadeh Decl. at 1-2 ("in the dental industry, 'fighting plaque' means removing plaque already present on the tooth"); MSJ at 8, ¶ 15. This fact will affect the question of whether Defendants made false representations to consumers in violation of California's FAL, breached express and/or implied warranties in violation of California's CLRA and Song-Beverly Consumer Warranty Act, and were unjustly enriched from unfair business practices in violation of California's UCL.

26.     Plaintiffs dispute that Listerine Total Care provides an added benefit with respect to plaque-removal to justify the price increase from Listerine Antiseptic. Compl. ¶ 17; MSJ at 6, ¶ 5; Sedghizadeh Decl. at 1. (LTC's "essential oils are useful only in the transient prevention of plaque build-up."); *see* MEDICAL BIOFILMS: DETECTION, PREVENTION AND CONTROL, *supra*, at 235; DeSario Decl., Ex. D. This fact will affect the question of whether Defendants made false representations to consumers in violation of California's FAL, breached express and/or implied warranties in violation of California's CLRA and Song-Beverly Consumer Warranty Act, and were unjustly enriched from unfair business practices in violation of California's UCL.

27.     Plaintiffs dispute that the FDCA preempts Plaintiffs' claim that Defendant misled consumers into believing that LTC was approved by the FDA as a plaque-removal drug. Compl. ¶ 22; MSJ at 18; Ghaim Decl., Ex. N. This fact will affect the question of whether Defendants engaged in false and deceptive advertising in violation of California's FAL, breached express and/or implied warranties in violation of California's CLRA and Song-Beverly Consumer Warranty Act, and were unjustly enriched from unfair business practices in violation of California's UCL.

### C.     DEFENDANTS' MOTION IS PREMATURE, AS THE PARTIES HAVE NOT COMPLETED SUFFICIENT DISCOVERY

Defendants ask this Court to make determinations of material facts before Plaintiffs have obtained the discovery necessary to determine whether disputed material facts exist. The Eleventh Circuit stands squarely against considering a motion for summary judgment at this stage of litigation. *Snook v. Trust Co. of Georgia Bank, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) ("This court has often noted that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery."); *see also Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Company*, 606 F.2d 602, 609

(5th Cir. 1979), *cert. denied*, 449 U.S. 820, 101 S. Ct. 77, 66 L. Ed. 2d 22 ("Summary Judgment should not, therefore, ordinarily be granted before discovery has been completed.").

To date, the only discovery in existence is a self-serving selection of ten articles and clinical trial findings Defendants produced in furtherance of early settlement negotiations led by lead plaintiffs' counsel who are no longer part of this case. Neither party has propounded <u>any</u> discovery or conducted <u>any</u> depositions. It was *previous lead counsel* – who agreed to settle their clients' individual claims (and, importantly, **not** those of the class) in exchange for Defendants' promise to not pursue their costs, and who made statements in open court that their clients' claims were meritless – that agreed with Defendants to forego discovery and abide by the current premature summary judgment briefing schedule. *Current lead counsel* never agreed to this arrangement nor would they have, and now that previous lead counsel have dismissed their cases, current lead counsel are unfairly prejudiced by a briefing schedule that does not allow for any investigation into the material facts at issue. For example, Plaintiffs' expert cannot form full and complete opinions without having access to the documents and experts on which Defendants rely to support their MSJ. Indeed, Plaintiffs need more information from Defendants to properly dispute the declaration of Josh Ghaim[7] and the results of Defendants' clinical trials. As this Court can see from Defendants' MSJ, Dr. Ghaim makes a variety of statements regarding LTC's efficacy, clinical trials and labeling; however, Plaintiffs cannot test *any* of these assertions without reviewing Defendants' documents and deposing Dr. Ghaim. In all likelihood, at deposition, Dr. Ghaim might well agree that LTC cannot *remove* plaque, in which case, Plaintiffs could easily make their case against Defendants for false advertising.

---

[7] Dr. Ghaim is the Vice President of Oral Healthcare Research & Development for Johnson & Johnson Consumer & Personal Products Worldwide.

The pithy amount of information surrounding plaque *removal* and the efficacy of LTC presented in the MSJ has already proven to be technical and complex. At this stage of the litigation, there are simply not enough facts for this Court to draw scientific conclusions about the plaque-fighting abilities of LTC. Plaintiffs therefore ask that the Court deny the MSJ or postpone a decision on summary judgment until after the necessary discovery is completed.

### D. EVEN IF THE MOTION IS HEARD, DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN FOR SUMMARY JUDGMENT.

#### 1. Plaintiffs' Evidence Raises an Issue of Material Fact as to Listerine Total Care's Plaque-Removing Abilities.

Plaintiffs' scientific evidence proves that LTC's essential oils *cannot remove plaque*. The essential oils in LTC "inhibit plaque formation but do not have a significant effect on existing plaque accumulation." DeSario Decl., Ex. B (MEDICAL BIOFILMS: DETECTION, PREVENTION AND CONTROL, *supra*, at 235); *see also* Sedghizadeh Decl. at 1 ("the essential oils in Listerine Total Care…are not capable of removing existing plaque"). Indeed, plaque can be removed through mechanical means (such as with a toothbrush and dental floss), but antibacterial mouthrinses can only "interrupt plaque development on a newly cleaned tooth surface." DeSario Decl., Ex. C (Fine, *supra* at 87); Sedghizadeh Decl. at 1. This evidence squarely turns Defendants' claim that essential oils effectively remove plaque on its head and clearly presents a disputed material fact. Furthermore, any claim Defendants make that LTC was approved as an "antiplaque agent" are irrelevant since an "antiplaque agent" is still only capable of preventing plaque build-up, not removing existing plaque. Sedghizadeh Decl. at 2 ("the FDA's determination that the essential oils in Listerine Total Care are 'safe and effective as an OTC antigingivitis/antiplaque agent' only speaks to the mouthwash's ability to prevent plaque build-up, not its ability to remove plaque."). *See also* DeSario Decl., Ex. B (MEDICAL BIOFILMS: DETECTION, PREVENTION AND

CONTROL, *supra*, at 235). Nor can Defendants clear up the dispute over LTC's plaque-removing abilities by equating the removal of existing plaque to the reduction of plaque build-up.[8] Sedghizadeh Decl. at 1 (reducing plaque build-up and removing plaque are "an entirely different matter"). As this Court can plainly see, upon a closer look at Defendants' numerous references to studies supporting LTC's ability to "reduce" plaque, "plaque reduction" means only that LTC has been shown to diminish the amount of plaque that would normally accumulate on a clean tooth – *not destroy the plaque already present*. DeSario Decl., Ex. C (Fine, *supra* at 87). Defendants' MSJ noticeably fails to provide *any* scientific support for the claim that LTC "removes" plaque. In fact, the word "remove" appears only once in the MSJ where Defendants state that LTC was **"intended to 'cleanse' teeth by removing 'unsightly' plaque"** – a tacit admission that LTC does not actually accomplish this goal. MSJ at 8, ¶ 15. (emphasis added).

Nor can Defendants show that the phrase "fights plaque" indisputably means "removes plaque." According to Dr. Sedghizadeh, in the dental industry, the phrase "fights" plaque means fights *existing* plaque (i.e., *removes* plaque already present on the tooth)[9] and the FDA agrees. Ghaim Decl., Ex. N ("Based on these labeled claims 'Fights Unsightly Plaque Above the Gum Line' and 'Prevents Cavities,' Listerine Total Care Anticavity Mouthwash is a drug . . . because the product is intended for use in preventing or mitigating disease, or to affect the structure or function of the body, by preventing cavities and **removing plaque**.") (emphasis added). It would therefore only stand to reason that consumers would be misled by Defendants' "fights plaque" advertising. Given these facts, which this Court must accept as true at this stage, Defendants'

---

[8] *See* Ghaim Decl. at 7, ¶ 33 ("reduction in plaque and gingivitis"); Ghaim Decl. at 8, ¶ 35 ("plaque and gingivitis reduction"); Ghaim Decl. at 8-9, ¶ 40 ("reducing plaque and gingivitis").
[9] Sedghizadeh Decl. at 2.

MSJ falls far short of disproving that LTC's claims misled consumers into believing a scientific impossibility.[10]

### 2. Since LTC Contains No Added Plaque-Removing Benefits over Listerine Antiseptic, LTC Should Not Have Been Marketed as a Premium Product.

Defendants' advertisements of LTC as a premium plaque-fighting product go beyond mere "puffery." Indeed, Defendants' authority regarding "puffery" – most of which is non-binding on this Court[11] – fails to address Defendants' misleading advertising claims recognized under California's Unfair Competition Law, Consumer Legal Remedies Act, and False Advertising Law. ***California courts*** agree that "a plaintiff may sufficiently allege injury where she contends that she did not receive the benefit of the bargain because a purchased product cost more than similar products without misleading labeling." *Von Koenig v. Snapple Bev. Corp.,* 713 F. Supp. 2d 1066, 1078 (E.D. Cal. 2010); *accord Koh v. S.C. Johnson & Son, Inc.,* 2010 U.S.

---

[10] In a last-ditch effort to shield the Court from the true nature of this dispute, Defendants argue that Plaintiffs cannot dispute the efficacy of LTC's essential oils because the issue was not raised in the Complaint. As this Court knows, a complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citing *Conley*, 355 U.S. 41 at 47-48). Plaintiffs' repeated allegation that "Listerine Total Care does not effectively fight plaque above the gum line" (Compl. ¶ ¶ 21, 32, 42, 50, 54, 60, 67, 77, 90) meets this standard and suffices to put Defendants on notice that Plaintiffs would dispute the plaque-fighting capabilities of Listerine Total Care, without limiting the claim to the sodium fluoride ingredient. Even if it does not, the Court should grant Plaintiffs leave to amend their Complaint, rather than foreclosing them from making their arguments.

[11] *Cook Perkiss & Liehe v. N.C. Collection Serv.*, 911 F.2d 242, 245 (9th Cir. 1990) (applying only federal law (Lanham Act)); *Rexall Sundown, Imc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 10 (E.D.N.Y. 2009) (non-binding and applying Lanham Act and New York state law); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) (non-binding and applying Lanham Act); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000) (non-binding and applying Lanham Act); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (reversing the district court's grant of the defendants' summary judgment motion and remanding because "a triable issue of fact exists as to whether Defendants' advertisements were false"); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) (non-binding and applying Lanham Act and New York state law); *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106-07 (10th Cir. 2009) (non-binding and applying Colorado state law); *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1008-09 (7th Cir. 2004) (non-binding and applying Racketeer Influenced and Corrupt Organizations Act); *In re Ford Motor Co. E-350 Van Products Liability Litig. (No. II)*, 2010 WL 2813788, *8 (D.N.J. July 9, 2010) (unpublished and noting, in dicta, that the plaintiffs' express warranty claim does not rely on the "America's Most Trustworthy" phrase that the present Defendants quote in their MSJ).

Dist. LEXIS 654 (N.D. Cal. Jan. 5, 2010); *Ackerman v. Coca-Cola Co.,* 2010 U.S. Dist. LEXIS 73156 at *76 (E.D.N.Y. July 21, 2010) ("California courts have held that a plaintiff who fails to receive the benefit bargained for because of a misrepresentation made by a defendant suffers sufficient injury to state a claim under the UCL."). Here, Defendants identify the LTC product as "Total Care" and charge a premium price for it despite the fact that LTC has the same antiplaque ingredients as regular Listerine. MSJ at 6, ¶ 5. Indeed, LTC expressly warrants that it "Fights Unsightly Plaque Above the Gum Line" and "removes plaque," thereby inducing consumers to buy the more expensive LTC rather than a comparable, lower-priced product like regular Listerine Antiseptic (which does not make those claims). The addition of sodium fluoride, therefore, cannot not justify the $1.77 increase in LTC's price[12] when Plaintiffs bargained for a premium *plaque-removing* product.[13] Sedghizadeh Decl. at 1 (sodium fluoride cannot remove plaque). Since there is a material factual dispute over whether Defendants misrepresented LTC's abilities, and gained unjust enrichment from a price increase without providing the claimed plaque-removing benefits, this Court must deny Defendants' MSJ.

### 3. Plaintiffs Can Bring Private Causes of Action Under California Consumer Protection Laws, Even if the FDA Pursues a Misbranding Claim.

In the Complaint, Plaintiffs allege that Defendants held their product out as a drug with plaque-removing capabilities. Plaintiffs' Complaint pleads: "Defendants placed Listerine Total Care into the stream of commerce and **marketed it as a drug**. By doing so, Defendants necessarily represented to consumers that the product had the approval of the Food and Drug Administration ("FDA"). In fact, Listerine Total Care does not have FDA approval for **all of the purposes for which it is marketed."** Compl. ¶ 22 (emphasis added). Defendants misinterpret

---

[12] DeSario Decl. at 2.

[13] LTC could actually be construed as an *inferior* product in comparison to Listerine Antiseptic, because LTC lacks the ADA Seal of Approval awarded to Listerine Antiseptic. *Compare* Ghaim Decl., Ex. C *with* Ghaim Decl., Ex. D.

Plaintiffs' claim as an attempt to privately enforce the FDCA. Despite the theories Defendants assert in their MSJ, Plaintiffs cite to the FDA warning letter not for the purpose of "privately enforcing" the FDCA; instead, Plaintiffs refer to the letter to show that, although the FDA considered whether essential oils can *reduce* plaque, they did not reach the issue of whether the essential oils can *remove* plaque. Sedghizadeh Decl. at 2 ("the FDA's determination that the essential oils in Listerine Total Care are 'safe and effective as an OTC antigingivitis/antiplaque agent' only speaks to the mouthwash's ability to prevent plaque build-up, not its ability to remove plaque"). Defendants market the whole of the LTC product as a drug (i.e., the label reads "Drug Facts"). Since Defendants hold LTC out as a drug (and thus, wholly approved by the FDA), their advertisements regarding plaque removal imply (falsely) that it is approved as a plaque-removal agent.

Defendants cite to a variety of non-binding and irrelevant case law from other jurisdictions, *see* n. 11, *supra*, but only one published decision from a California court.[14] As this Court knows, it must apply *California law* – which is particularly protective of consumer claims; case law interpreting other states' statutes is not applicable here. Moreover, for the very reason FDA regulations provide no private remedy for consumers who are misled by product marketing, California law does. In California, consumers can seek redress for unfair, deceptive, untrue or misleading advertising (Cal. Bus. & Prof. Code § 17500), unfair or deceptive trade practices (Cal. Civ. Code § 1770(a)(5)), and unlawful and/or fraudulent business practices (Cal. Bus. & Prof. Code §§ 17200-17208). Despite Defendants' claims to the contrary, California consumers

---

[14] Notably, in the unpublished California case to which Defendants cite, the court dismissed the plaintiffs' claims because the plaintiffs failed to plead "particularized facts which, if true, establish that [the defendant] fraudulently misrepresented the effectiveness of [the product]." *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 2009 U.S. Dist. LEXIS 58697 at *22 (C.D. Cal. June 17, 2009). In stark contrast, Defendants' MSJ does not dispute the sufficiency of Plaintiffs' fraud claim as pled, nor could it.

are *not* precluded from bringing such claims against manufacturers of FDA-approved drugs.[15] Indeed, the only binding California case cited in Defendants' MSJ **agrees with Plaintiffs**. *Summit Tech. v. High-Line Medical Instruments, Co.*, 933 F. Supp. 918 (C.D. Cal. 1996). In *Summit Technology*, the court allowed the plaintiffs to pursue all of their California causes of action regarding an FDA approved product under California Business & Professions Codes sections 17200 *et seq.* and 17500. *Summit Tech.* at 942-43. "Under California law, any unlawful business practice, including violations of laws for which there is no direct private right of action, may be redressed by a private action under § 17200." *Id.* (citing *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 210-11, 197 Cal. Rptr. 783, 673 P.2d 660 (1983)). Defendants' reference to dictum that a plaintiff cannot privately enforce the FDCA is irrelevant here since, as explained above, the FDA has not endeavored to determine whether LTC's essential oils remove plaque and therefore there can be no question as to whether the FDCA has preempted Plaintiffs' claims.

Finally, Defendants grasp at straws in arguing that this Court's decision in the *Pelkey* case somehow estops Plaintiffs from alleging that LTC was improperly marketed as a drug. MSJ at 18. First of all, in *Pelkey*, this Court did not reach the legal issues present here because it applied Florida law, not California law. Nonetheless, this Court found the *Pelkey* plaintiffs **pled a plausible claim** under Florida law for unfair competition based on LTC's advertising and "significant price premium," and for breach of express warranty based on LTC's "fights

---

[15] Plaintiffs' claims are not preempted when brought under state law that mirrors its federal counterpart. 21 U.S.C. 379s ("no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter"). Furthermore, "a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damage remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action." *Ackerman, supra* 2010 U.S. Dist. LEXIS 73156 at *22 (citing *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431 at 432 (2005)). Here, the FDCA prohibits false or misleading labeling, including advertisements, and California law creates a private right of action for these claims. *Id.* at *24 n.12.

unsightly plaque above the gumline" labeling and advertising, which "became part of the basis of the bargain," but did not "provide the benefits described." *Pelkey v. McNeil Consumer Healthcare*, 2011 U.S. Dist. LEXIS 21372, at *15-16 (S.D. Fla. Feb. 16, 2010). Furthermore, this Court *denied* Defendants' Motion to Dismiss the Florida Deceptive and Unfair Trade claims on the basis that it could not decide any factual issues until "the record has been developed." *Id.* at *9. Defendants' MSJ – which is essentially a repackaged version of their Motion to Dismiss – does not improve the development of the record since none of the information added goes to plaque <u>removal</u>. Since this Court never foreclosed Plaintiffs' UCL claims, and since the record remains grossly underdeveloped, Defendants' MSJ should be denied.

### III.     CONCLUSION

Defendants' MSJ should not be considered until the completion of discovery, after Plaintiffs have had the opportunity to gather the evidence they need to oppose it. Even at this early stage, however, Plaintiffs have presented clear material facts that are in dispute. For all of the foregoing reasons, Plaintiffs request that the Court deny Defendants' MSJ.

Dated: September 27, 2011 Respectfully submitted,

/s/ Molly A. DeSario
Scott Edward Cole, Esq. (S.B. #160744)
Matthew R. Bainer, Esq. (S.B. #220972)
Molly A. DeSario, Esq. (S.B. #230763)
Hannah R. Salassi, Esq. (S.B. #230117)
**SCOTT COLE & ASSOCIATES, APC**
1970 Broadway, Ninth Floor
Oakland, California 94612
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
e-mail: scole@scalaw.com
e-mail: mbainer@scalaw.com
e-mail: mdesario@scalaw.com
e-mail: hsalassi@scalaw.com
Web:   www.scalaw.com

Attorneys for Representative Plaintiffs
Itak Moradi, Kathy Pahigian, and the
Plaintiff Class