**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

No. 11-MDL-2210-DIMITROULEAS

IN RE: LISTERINE TOTAL CARE MOUTHWASH
MARKETING AND SALES PRACTICES LITIGATION

This Document Relates to: All Actions
_____/

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**
**(Including Response to "Disputed Facts" and Memorandum of Law)**

In opposing summary judgment, the *Britton* and *Terrell* plaintiffs disregard their own allegations in the Master Complaint and abandon their original theory of the case. They no longer dispute that Listerine Total Care contains the same four essential oils as Listerine Antiseptic, and they concede that these ingredients are clinically proven to control and prevent gingivitis and plaque. McNeil has disproved plaintiffs' core allegation that Listerine Total Care cannot "fight unsightly plaque above the gum line" because its "sole" active ingredient prevents cavities, but does not fight plaque. Summary judgment should be granted for this reason alone.

Unwilling to concede defeat, plaintiffs advance four reasons why McNeil's Motion for Summary Judgment should be denied. None of plaintiffs' reasons withstands scrutiny.

***First***, plaintiffs argue that summary judgment should be denied because they "have not obtained the discovery necessary to determine whether disputed material facts exist." Pls. S.J. Opp. [Dkt #90] at 8. The law is clear, however, that parties cannot simply invoke the need for further discovery in a brief opposing summary judgment. Pursuant to Fed. R. Civ. P. 56(d), parties must file a sworn declaration detailing the information that they purportedly need, and attesting that they lack discovery despite diligent efforts to obtain it. Plaintiffs ignored this procedural requirement, and they cannot meet their burden under Rule 56(d) in any event.

1

**Second**, after abandoning their original theory of liability, plaintiffs' opposition attempts to substitute an entirely new one.  For the first time, plaintiffs contend that the statement that Listerine Total Care "fights unsightly plaque above the gum line" is false because (1) the word "fights" in the dental industry means "removes," and (2) Listerine Total Care controls, reduces and prevents plaque, but allegedly does not "remove" it.  This novel theory of liability appears nowhere in plaintiffs' Master Complaint, and it is well-established that parties cannot drum up new allegations to defeat summary judgment.

Even if it were pled, plaintiffs' new theory of liability is unsupported by any competent evidence and is unsustainable as a matter of law.  The Listerine Total Care label claimed that the product "fights unsightly plaque above the gum line."  There is no evidence in the record that *any* consumers, let alone the named plaintiffs, equate "fights" plaque with "removes" plaque.  Nor can plaintiffs prove that reasonable consumers interpret "fights" to mean "removes "through a declaration from a dentist.  Plaintiffs' dentist is not qualified to opine about the messages that consumers took away from the Listerine Total Care label, and his unsupported opinion regarding the meaning of "fights plaque" is inadmissible.

Even if plaintiffs could prove that "fights" plaque is synonymous with "removes" plaque, the FDA's Antiplaque Monograph expressly permits manufacturers to make plaque removal claims for essential-oil-containing mouthwashes such as Listerine Total Care.  As a matter of law, pursuant to the doctrines of safe harbor and express preemption, it cannot be false or misleading to purportedly *imply* that Listerine Total Care removes plaque when the FDA has determined that Listerine Total Care could be *expressly* labeled for that purpose.

**Third**, plaintiffs assert that the "Total Care" name, plus the fact that Listerine Total Care costs more than Listerine Antiseptic, creates a false impression that Listerine Total Care is a

2

"premium" product.  Plaintiffs, however, make no serious attempt to distinguish the cases cited in McNeil's opening brief that recognize that laudatory terms such as "ultimate," "complete," and "total" are classic examples of non-actionable puffery.  Plaintiffs also concede that Listerine Total Care contains an ingredient (sodium fluoride) and provides a benefit (cavity prevention) that Listerine Antiseptic does not.  As a matter of law and common sense, it is not unlawful to charge more for a product that indisputably does more, or to give that product a different name.

*Fourth*, plaintiffs contend that they should be permitted to proceed with their misbranding claim – *i.e.*, that by placing Listerine Total Care into the stream of commerce, McNeil necessarily implied that Listerine Total Care is a "drug" for each of the benefits stated on its label – because no California court has held that such claims are preempted.  But preemption does not vary state-by-state, and plaintiffs are incorrect in any event.  Courts both in, and outside of, California have held that claims of implied FDA approval are barred by the Federal Food Drug and Cosmetics Act ("FDCA").

## RESPONSE TO PLAINTIFFS' STATEMENT OF DISPUTED FACTS

Defendants' Statement of Undisputed Facts contained 23 enumerated paragraphs of factual contentions. Plaintiffs attempt to manufacture a dispute over 2 of them, but concede that all the rest are true.  *See* Pls. S.J. Opp. at 6 & n.6.  As to the 2 paragraphs that plaintiffs dispute, plaintiffs misstate McNeil's factual contentions and then dispute their self-serving renditions:

¶ **3**.    McNeil contended in its opening brief that the four essential oils are "recognized by FDA as safe and effective for use in the control of gingivitis and plaque." Defs. S.J. Mot. at 6.  In their opposition, plaintiffs restate McNeil's contention but replace the word "control" with the word "removal."  Pls. S.J. Opp. at 6.  Plaintiffs then proceed to dispute whether the essential oils in Listerine Total Care remove plaque.

3

**McNeil's Response**:   Since plaintiffs do not genuinely dispute McNeil's original contention that the essential oils in Listerine Total Care are recognized by the FDA as safe and effective for use in the control of gingivitis and plaque, that fact should be deemed admitted.  Moreover, contrary to plaintiffs' contention, FDA recognizes that essential-oil-containing mouthwashes such as Listerine Total Care remove plaque.  FDA Advanced Notice of Proposed Rulemaking, Oral Health Care Drug Products for Over-the-Counter Human Use, 68 Fed. Reg. 32232, 32239 (May 29, 2003) ("Antiplaque Monograph").  As a matter of law, plaintiffs cannot proceed on a theory that the Listerine Total Care label falsely implies that the product removes plaque because FDA expressly permits plaque removal claims for antiplaque mouthwashes.

¶ 7.    McNeil contended in its opening brief that Listerine Total Care is classified by FDA as a "drug" because it is intended to prevent cavities.  Defs. S.J. Mot. at 9.  Plaintiffs restate this contention in their opposition but insert the word "only."  Plaintiffs then dispute whether Listerine Total Care is classified as drug "only" because of its anticavity benefit.

**McNeil's Response**:  McNeil disputes that FDA classifies Listerine Total Care as a drug for purposes of preventing cavities and removing plaque, and notes that the FDA Letter – the only evidence that plaintiffs cite in support of their contention – is not a final, or even binding, determination of Listerine Total Care's regulatory status.[1]   This dispute, however, is immaterial for purposes of summary judgment.  As a matter of law, plaintiffs are precluded from suing over the contents of the FDA Letter because only FDA can enforce the FDCA and challenge a product's regulatory status as a "drug."

*   *   *

Plaintiffs also add four factual contentions of their own in their summary judgment opposition.  These factual contentions are unsupported by any competent evidence in the record and/or are irrelevant for purposes of McNeil's summary judgment motion.

¶ 24.   Plaintiffs contend that Listerine Total Care does not remove plaque above the gum line.

---

[1]      *See* 21 C.F.R. § 10.85(k) (a warning letter "does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed"); *accord Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983) (a warning letter does not "constitute a final decision by the FDA" and does not "commit the FDA to enforcement action"); *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 547 F. Supp. 2d 939, 946 (E.D. Wis. 2008) (a warning letter stating that product is "misbranded" is not FDA's "official position").

4

**McNeil's Response**:  The FDA recognizes that essential-oil-containing mouthwashes such as Listerine Total Care remove plaque.  Antiplaque Monograph at 32239.  This issue, however, is immaterial for purposes of summary judgment.  The label for Listerine Total Care never claimed that the product "removes" plaque, and plaintiffs cannot proceed on a theory that the label implied a false plaque "removal" message when, according to FDA, the product could be expressly labeled for that purpose.

¶ 25.   Plaintiffs contend that the phrase "fights plaque" means "plaque removal" and not merely prevention of plaque build-up.

**McNeil's Response**:  There is no evidence in the record that the plaintiffs or any consumers interpreted "fights" on the Listerine Total Care label to mean "removes." Although plaintiffs submitted a declaration from a dentist who opines that "fights plaque" means "removes plaque" in the dental industry, plaintiffs' dentist is not qualified to render an opinion regarding the message consumers took away from the Listerine Total Care label.

¶ 26.   Plaintiffs contend that Listerine Total Care does not provide an added plaque-removal benefit to justify the price increase from Listerine Antiseptic.

**McNeil's Response**:  It is undisputed that Listerine Total Care contains an ingredient (sodium fluoride) and provides a benefit (cavity prevention) that Listerine Antiseptic does not.  Pls. S.J. Opp. at 6 n.6.  As a matter of law, it is not false or misleading to charge a higher price for a product that provides an additional benefit.

¶ 27.   Plaintiffs contend that the FDCA does not preempt their claim that McNeil improperly marketed Listerine Total Care as a drug.

**McNeil's Response**:  This is not a contention of fact, but an erroneous legal conclusion that requires no response.

## <u>ARGUMENT</u>

## I.    **Plaintiffs Have Conceded That Their Allegations Have No Merit**

Based on a misreading of the FDA Letter, plaintiffs brought suit alleging that Listerine Total Care cannot "fight unsightly plaque above the gum line" or provide "total care" because the sole active ingredient listed on the product's label is sodium fluoride, which prevents cavities but does not fight plaque.  This is the only theory of liability alleged in the Master Complaint:

- "The sole active ingredient of the mouthwash is listed as 'sodium fluoride 0.02221%' – an ingredient which has not been shown to fight or prevent plaque."  (Cmplt. ¶ 35).

- "The mouthwash cannot perform its ordinary and represented purpose because it contains a sole active ingredient not proven effective for providing  [plaque-fighting properties]." (Cmplt. ¶¶ 93-94).

- "The mouthwash cannot perform its ordinary and represented purpose because it contains a sole active ingredient not proven effective for providing . . . consumers with plaque-fighting properties."  (Cmpt. ¶¶ 108-109).

McNeil supported its Motion for Summary Judgment with incontrovertible proof that these allegations are unfounded.  The evidence shows that, in addition to sodium fluoride, Listerine Total Care contains eucalyptol, menthol, methyl salicylate and thymol – ingredients that have been clinically proven to combat plaque and gingivitis.  *See* 8/2/11 Ghaim Decl. [Dkt. #71] at ¶¶ 16-20.  Moreover, these proven antiplaque agents are present in Listerine Total Care at concentrations that FDA considers safe and effective to deliver antiplaque and antigingivitis benefits.  *Id.* at ¶¶ 28-30.

Plaintiffs make no attempt to dispute these facts.[2]  To the contrary, plaintiffs' opposition finally drops the pretense that Listerine Total Care lacks antiplaque ingredients, and plaintiffs acknowledge that the essential oils in Listerine Total Care "prevent plaque build up" (Pls. S.J. Opp. at 3 & 6), "inhibit plaque formation" (*Id.* at 6), "reduce plaque" (*Id.* at 7), and "diminish the amount of plaque that would normally accumulate on a clean tooth" (*Id.*).  In other words, plaintiffs concede that their original theory of liability – the only one alleged in the Master Complaint – has no merit.  McNeil is entitled to summary judgment on this basis alone.

---

[2]     After McNeil filed its Motion for Summary Judgment, the named plaintiff in the *Seago* action obtained the Court's approval to voluntarily dismiss his claims with prejudice.  [Dkt. #75]  All told, plaintiffs in six of the eight cases originally consolidated in this MDL proceeding have conceded that the allegations in their complaints were baseless and have voluntarily dismissed their claims.

5005274v.1

## II.    Plaintiffs' Failure To Take Discovery Is Not Grounds To Deny Summary Judgment

Plaintiffs urge the Court to deny summary judgment because they have been "deprived" of discovery.  In light of their concession that the core allegations in the Master Complaint are unsupportable, this request scarcely warrants a response.  No amount of discovery could breathe life back into the Master Complaint.  Plaintiffs concede that their claims, as pled, are not true.

Plaintiffs' contention that they were deprived of discovery is baseless in any event.  This Court's Pre-Trial Order No. 1 [Dkt. #21] expressly authorized plaintiffs to take discovery on the issues pertinent to McNeil's summary judgment motion.  *Id.* at 7 ("This litigation shall proceed in two phases, with *discovery in Phase I* limited to whether Listerine Total Care 'fights unsightly plaque above the gum line' and promotes healthy gums").[3]  Plaintiffs declined that opportunity.

In the more than four months since Scott Cole & Associates ("SC&A") was appointed Lead Counsel for plaintiffs, plaintiffs served no document requests, noticed no depositions, and sought no factual information from McNeil whatsoever.  Such an "apparent failure" to take discovery "strongly suggests" that plaintiffs would rather complain "of a non-existent discovery 'hindrance'" than actually get around to "learning the truth." *Eagle Nationwide Mortg., Co. v. Plaza Home Mortg., Inc.*, 2008 WL 555338, at *4 (E.D. Pa. Feb. 28, 2008); *see also Springs Window Fashions LP v. Novo Ind., L.P.*, 323 F.3d 989, 997 (Fed. Cir. 2003) ("When a party fails to secure discoverable evidence due to his own lack of diligence, it is not an abuse of discretion for the trial court to refuse to grant a continuance to obtain such information.").

Moreover, if plaintiffs had a genuine need for discovery, Fed. R. Civ. P. 56(d) establishes the exclusive procedure for seeking that relief.  Rule 56(d) requires a party opposing summary judgment to show "by affidavit or declaration" why further discovery is justified and why they

---

[3]      All emphasis is supplied unless otherwise expressly stated.

"cannot present facts essential" to opposing summary judgment.[4]  That affidavit or declaration also must describe "(1) the information sought and how it is to be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) *what efforts the affiant has made to obtain the information*; and (4) why those efforts were unsuccessful."  *Sage Realty Corp. v. Ins. Co. of North America*, 34 F.3d 124, 128 (2d Cir. 1994); *see also Wingster v. Head*, 318 Fed. Appx. 809, 813 (11th Cir. 2009) ("[O]ne must conclusively justify his entitlement to the shelter of [Rule 56(d)] to rebut the movant's showing of the absence of a genuine issue of fact.").

Plaintiffs made no attempt to meet the prerequisites of Rule 56(d), and, in light of their lack of diligence in pursuing discovery, it would be impossible for them to do so.  Plaintiffs' belated request to conduct discovery thus provides no grounds to deny summary judgment.  *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137 (2d Cir. 1994) (raising the "need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a [Rule 56(d)] affidavit"); *see also McKissick v. Yuen*, 618 F.3d 1177, 1190 (10th Cir. 2010) (same); *C.B. Trucking, Inc. v. Waste Management, Inc.*, 137 F.3d 41, 44 (1st Cir. 1998) (same).[5]

---

[4]      Rule 56(d) used to be codified as Rule 56(f), and cases before December 2010 cite Rule 56(f).

[5]      Plaintiffs also complain that the summary judgment briefing schedule was "prejudicial," and they claim that their current Lead Counsel never agreed to it.  The summary judgment schedule, however, was discussed at the Court's most recent status conference.  SC&A appeared at that hearing, informed the Court that SC&A was ready to be substituted as Lead Counsel, and agreed to the summary judgment schedule on the record.  Tr. 6/17/11 Status Conf. [Dkt. #44] at 17:19-19:24 (Counsel for McNeil: "We would . . . move for summary judgment by Tuesday, August 2nd.  We would suggest that plaintiffs' opposition be due by Tuesday, October 25 . . . ."; Counsel for Plaintiffs: "I have no objection to that proposal.").  Moreover, the summary judgment schedule afforded plaintiffs two months to oppose summary judgment.  Plaintiffs chose to spend that time filing unsuccessful motions to stay and transfer, rather than developing the record.

8

### III.   Plaintiffs Cannot Defeat Summary Judgment By Relying Either On Unpled Allegations Or A New Theory of Liability

Plaintiffs' opposition is primarily devoted to plaintiffs' new theory that the statement "fights unsightly plaque above the gum line" is false because (1) "fights plaque" means that the product "removes" plaque, and (2) Listerine Total Care controls, reduces and prevents plaque, but allegedly does not "remove" it – allegations nowhere pled in plaintiffs' Master Complaint.  It is well-established that a party cannot resort to unpled allegations to escape summary judgment. "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (the law is "clear" that where "the complaint does not include the necessary factual allegations," raising such claim on summary judgment "is insufficient to present the claim to the district court").

The lone theory of liability alleged in the Master Complaint is that "fights unsightly plaque above the gum line" is false because Listerine Total Care's sole active ingredient provides no plaque benefits.  The Master Complaint does not allege that "fights plaque" means "removes plaque"; that the essential oils in Listerine Total Care cannot remove plaque; or that plaintiffs purchased Listerine Total Care to remove existing plaque, rather than control, reduce or prevent plaque.[6]  Since plaintiffs' new theory is not pled, the Court need not consider it.  *See K&N Eng'g, Inc. v. Spectre Performance*, 2011 WL 4387094, at *14 (C.D. Cal. Sept. 20, 2011) (rejecting plaintiff's unpled theory why advertising was false because plaintiff raised it for the first time in opposition to summary judgment).

---

[6]     Plaintiffs evidently developed their new liability theory *after* the Court's last status conference, when Lead Counsel was pressed to explain why the *Britton* and *Terrell* plaintiffs – unlike the plaintiffs in every other case – were unwilling to concede that their complaints were premised on a mistake.  Lead Counsel made no mention of plaintiffs' current theory that "fights plaque" implies a false message of "plaque removal."  Tr. 6/17/11 Status Conf. [Dkt. #44] at 12:18-13:22.

In a footnote in their opposition, plaintiffs make the remarkable assertion that their new theory of liability, in fact, is pled because the Master Complaint includes an allegation that "fights unsightly plaque above the gum line" is false.  Pls. S.J. Opp. at 12 n.10.  Such a conclusory allegation does not give plaintiffs freedom to jettison their original theory of liability and substitute a new one.  Indeed, to prevent this type of gamesmanship, courts have held that a complaint in a false advertising case must do more than just identify the promotional claims in dispute.  It must allege the reasons *why* plaintiffs contend those claims are false.  *See Stevens v. JPMorgan Chase Bank, N.A.*, 2010 WL 329963, at *6 (N.D. Cal. Jan. 20, 2010) (complaint deficient absent "an explanation . . . why [the statement] complained of was false"); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 394 (W.D.N.Y. 2010) ("vague references to misrepresentations and false statements" insufficient absent full explanation as to "how those statements were false").[7]

## IV.  Plaintiffs Cannot Proceed On A Theory That "Fights Plaque" Is Impliedly False

Even if plaintiffs were permitted to raise new allegations now, their new liability theory is unsustainable for at least two reasons.  *First*, there is no evidence in the record that any consumers interpreted "fights" plaque on the Listerine Total Care label to mean that Listerine Total Care "removes" plaque.  *Second*, even if "fights" were synonymous with "removes," the FDA's Antiplaque Monograph expressly permits essential-oil-containing mouthwashes to make plaque "removal" claims on their labels.  As a matter of law, plaintiffs cannot seek to hold McNeil liable for a purportedly implied claim that, per the FDA, McNeil could make expressly.

---

[7]     In the same footnote, plaintiffs suggest that the Court should grant leave to amend the Master Complaint to inject this new theory of liability into the case.  Pls. S.J. Opp. at 12 n.10.  Courts routinely reject such requests.  *See Sands v. Key West Housing Authority*, 2007 WL 1412943, at *4 (S.D. Fla. May 10, 2007) ("Plaintiff may not amend his Complaint except through compliance with Federal Rule of Civil Procedure 15 (*e.g.,* he may not simply raise new claims in a response to Defendants' Motion for Summary Judgment).") (collecting cases holding same).

## A.   There Is No Evidence In The Record That Listerine Total Care Has Been Promoted With Express or Implied Plaque-Removal Claims

According to plaintiffs' new theory, "fights unsightly plaque above the gum line" is false because "fights plaque" does not mean that the product controls, prevents or reduces plaque – plaintiffs concede that Listerine Total Care delivers those benefits.  Plaintiffs contend that "fights plaque" implies "plaque removal." [8]  Pls. S.J. Opp. at 7.  Under California law, plaintiffs alleging that a word or phrase is implicitly false bear the burden of proving that reasonable consumers actually take away the purportedly implied false message.  *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (Cal. Ct. App. 2006).  The *Britton* and *Terrell* plaintiffs have not shown that *any* consumers interpreted "fights" plaque on the Listerine Total Care label to mean "removes" plaque.  Nor have plaintiffs submitted affidavits attesting that even they took away an implied "plaque removal" message from the Listerine Total Care label.

In an attempt to discharge their burden of proof, plaintiffs accompanied their summary judgment opposition with a declaration from a dentist, Dr. Parish Sedghizadeh, in which he states that "in the dental industry, 'fighting plaque' means removing plaque."  Sedghizadeh Decl. [Dkt. #93] at ¶ 4.  Plaintiffs burden, however, is not to show how dentists interpret the phrase

---

[8]      There is no evidence in the record that McNeil promoted Listerine Total Care with express claims that it "removes" plaque.  Plaintiffs' opposition cites a paragraph in the Master Complaint that alleges that a "micro website" in 2009 claimed that Listerine Total Care "removes more plaque."  (Cmplt. ¶ 23).  Allegations in a complaint, however, are not evidence.  *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) ("allegations . . . are not evidence and cannot by themselves create a genuine issue of material fact").

Plaintiffs also cite to a sentence in McNeil's moving brief that explained that Listerine Total Care is classified as a cosmetic under FDA regulations because it is intended to "cleanse teeth by removing unsightly plaque."  This statement was not a description of McNeil's promotional claims.  Defs. S.J. Mot at 9.  Rather, it was a one-sentence summary of three paragraphs from the Declaration of Josh Ghaim in which Dr. Ghaim accurately stated:  "'Fights unsightly plaque above the gum line' referred to the fact that Listerine Total Care provides a cosmetic benefit by helping to prevent the accumulation of visible plaque on teeth.'"  8/2/11 Ghaim Decl. [Dkt. #71] at ¶ 48.

The only advertising of record is the Listerine Total Care label, and it claimed that the product "fights unsightly plaque above the gum line."

"fight plaque" in "the dental industry," but to show how reasonable consumers interpreted the Listerine Total Care label in the drugstore. *See Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 886 (7th Cir. 2000) (acknowledging that an "anticavity" claim on toothpaste would mean different things "[t]o a dentist" and "to shoppers in the toothpaste aisles of drugstores"); *see also W.L. Gore Assoc., Inc. v. Totes, Inc.*, 788 F. Supp. 800, 807 (D. Del. 1992) ("technical industry standards" or definitions "are often irrelevant to consumer expectations").

Moreover, Dr. Sedghizadeh is not an expert in marketing or consumer perception, and nothing in his training or experience as a dentist qualifies him to opine on the messages that consumers took away from the Listerine Total Care label. *See Hackett v. Procter & Gamble Co.*, 2008 WL 4646049, at *2 (S.D. Cal. Oct. 17, 2008) (trained chemist's opinion regarding consumers' perceptions of advertising deemed inadmissible); *LG Electronics v. Whirlpool Corp.*, 2010 WL 3613814, at **5-6 (N.D. Ill. Sept. 3, 2010) (engineer not qualified to render an opinion concerning consumers' understanding of the word "steam"). His conclusory opinion of the meaning of "fights plaque" is made without any support. *See Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F.3d 874, 881 (7th Cir. 2011) ("Mere conclusions" from an expert "without a hint of an inferential process, are useless to the court.") (internal quotation omitted). As such, Dr. Sedghizadeh's opinion is inadmissible and cannot be used by plaintiffs as "a talisman against summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d. Cir. 1997); *accord California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1149 n.4 (9th Cir. 2011) (expert opinions "inadmissible at trial" are "inappropriate material for consideration on a motion for summary judgment"); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (summary judgment is not "impossible whenever a party has produced an expert to support its position").

Plaintiffs' inability to come up with credible evidence that "fights" plaque means "removes" plaque is no surprise.  In a prior lawsuit over advertising for Listerine Antiseptic, a District Court in the Southern District of New York reviewed the clinical evidence on the efficacy of essential-oil-containing mouthwashes and held that "fights plaque and gingivitis" is an accurate description of what Listerine products do.  *McNeil-PPC, Inc. v. Pfizer Inc.*, 351 F. Supp. 2d 226, 256-57 (S.D.N.Y. Jan. 6, 2005) (defendant can continue to rely on the clinical studies "to support the claim that Listerine fights plaque and gingivitis").  Moreover, McNeil is just one of many manufacturers of oral care products that use "fights" on product labels to mean prevents, reduces or controls:

- Aquafresh Advanced Toothpaste:  "FIGHTS CAVITIES AND PLAQUE"
- Crest Pro-Health Mouthwash:  "FIGHTS PLAQUE & GINGIVITIS"
- Colgate Total Toothpaste:  "FIGHTS TARTAR"
- DenTek Floss Picks:  "FIGHTS TOOTH DECAY"

*See* 10/25/11 Declaration of Travis J. Tu Exhs. A-D.  It is self-evident that "fights" is used on these packages to mean prevents, reduces, or controls because no products, for example, can "remove" existing cavities or tooth decay.

Courts applying California law have rebuffed attempts by plaintiffs to ascribe meanings to words that are out of step with common usage or industry practice.  *See, e.g., Sugawara v. Pepsico, Inc.*, 2009 WL 1439115, at *3 (E.D. Cal. May 21, 2009) (no reasonable consumer would interpret "crunchberries" to mean cereal contained actual berries); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *5 (N.D. Cal. Jan. 10, 2011) (finding label was unlikely to be misunderstood as a matter of law); *Hill v. Roll Intern. Corp.*, 195 Cal. App. 4th 1295, 1304-05 (Cal. Ct. App. 2011) (same).  Federal courts applying analogous false advertising provisions of the Lanham Act have drawn the same line in the sand.  *See Buetow v. A.L.S.*

*Enterprises, Inc.*, 650 F.3d 1178, 1186-87 (8th Cir. 2011) (finding claim that product "eliminates" odor cannot be proven false given that many products use "eliminates" to mean "reduces" odor).  In the absence of any evidence that consumers have been misled, plaintiffs should not be permitted to enforce their novel interpretation of what "fights plaque" means.

### B.    FDA Expressly Permits Plaque "Removal" Claims On Essential-Oil-Containing Mouthwashes

Even assuming *arguendo* that plaintiffs could prove that reasonable consumers interpret "fights plaque" to mean "removes plaque," plaintiffs cannot seek to hold McNeil liable for conveying an implied message that Listerine Total Care "removes plaque" because the FDA permits essential-oil-containing mouthwashes like Listerine Total Care to make express claims regarding plaque removal on their labels.

As McNeil explained in its opening brief, the FDA tightly regulates the labeling of antiplaque and anticavity mouthwashes.  Defs. S.J. Mot. at 13.  In 1998, FDA empaneled a committee of experts to conduct a comprehensive review of the scientific evidence supporting the efficacy of antiplaque mouthwashes.  After years of close study, the committee released its findings in 2003 and proposed detailed rules to govern the labeling of such products.  *See* FDA Advanced Notice of Proposed Rulemaking, Oral Health Care Drug Products for Over-the-Counter Human Use, 68 Fed. Reg. 32232, 32239 (May 29, 2003) ("Antiplaque Monograph").

The FDA's Antiplaque Monograph provides detailed guidance on the claims that manufacturers of antiplaque mouthwashes can truthfully make regarding the efficacy and benefits of these products:

> ***Indications***
>
> The indications for antigingivitis/antiplaque drug products should be simply and clearly stated, inform the user of the general pharmacological action of the product, and provide a reasonable expectation of the results to be anticipated from use of the product. . . .

> *c. For all antigingivitis/antiplaque products.* The Subcommittee's recommended indication for OTC drug products containing antigingivitis/antiplaque active ingredients is: "helps (select one of the following: 'control,' 'reduce,' 'prevent,' or '**remove**') **plaque** . . ."
>
> *d. For antigingivitis/antiplaque products containing the fixed combination of eucalyptol, menthol, methyl salycilate, and thymol.* The Subcommittee's recommended indication for OTC drug products containing the fixed combination of eucalyptol, menthol, methyl salycilate and thymol **is the statement in paragraph c. above** . . .

Antiplaque Monograph at 32239.  Accordingly, the Antiplaque Monograph not only recognizes that mouthwashes that contain "the fixed combination of eucalytpol, menthol, methyl salycilate and thymol" remove plaque, but expressly permits manufacturers to make plaque removal claims on these products' labels.

Labeling claims that are expressly permitted by FDA are shielded from attack under California state law by the doctrines of "safe harbor" and express preemption.

As the California Supreme Court explained, the safe harbor doctrine is necessary to prevent plaintiffs from using California's expansively worded unfair competition and false advertising laws to attack promotional claims or practices that government agencies permit:

> Courts may not simply impose their own notions of the day as to what is fair or unfair.  Specific legislation may limit the judiciary's power to declare conduct unfair.   If the Legislature has ***permitted certain conduct*** or considered a situation and concluded no action should lie, courts may not override that determination.  When specific legislation provides a "safe harbor," plaintiffs may not use the general unfair competition law to assault that harbor. . . .  [F]or the safe harbor doctrine to apply, the legislation must actually bar the action or ***clearly permit the conduct***.

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (Cal. 1999).  The safe harbor doctrine has been applied to bar plaintiffs from using California law to challenge advertising or promotional practices permitted by statutes, regulations and even less formal policies.  *See id.*; *Alvarez v. Chevron Corp.*, -- F.3d --, 2011 WL 3850660, at **5-6 (9th Cir.

Sept. 1, 2011) (promotional practices for gasoline shielded by safe harbor because clearly permitted by California's "regulatory regime" governing the marketing of gas); *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (disclosures clearly permitted by the Truth In Lending Act shielded from attack by the safe harbor doctrine).

Congress also has seen fit to protect labeling claims that FDA permits, and has expressly preempted states from imposing requirements on nonprescription drug labels that are "not identical with" the FDA's rules.[9]   21 U.S.C. § 379r(a).   Thus, plaintiffs are preempted from asserting state law claims "that would result in the imposition of different or contradictory labeling" standards not adopted by FDA.  *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 794 (Cal. Ct. App. 2002); *see also Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 790 (E.D. Tex. 2008) (state law claims preempted when plaintiffs seek requirements that are "different from or in addition to, or otherwise not identical" to those "imposed by the FDA"); *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1283 (C.D. Cal. 2008) (same).[10]

It cannot seriously be disputed that plaintiffs' new theory of liability directly conflicts with the Antiplaque Monograph.  The Antiplaque Monograph authorizes manufacturers of essential-oil-containing mouthwashes to claim that such products help "control," "reduce," "prevent," or "remove" plaque.  Antiplaque Monograph at 32239.  Plaintiffs contend that one of

---

[9]     State law "requirements" includes private causes of action under state law.  *See, e.g., Berenguer v. Warner-Lambert Co.*, 2003 WL 24299241, at *5 (Fla. Dist. Ct. App. July 31, 2003) ("State law causes of action for damages constitute 'requirements' within the meaning of federal preemption statutes . . . . [B]ecause the advertising statements that plaintiffs challenge . . . do not substantially differ from statements contained in FDA-approved labels, they necessarily challenge the FDA-approved statements on the labels themselves, and, accordingly, are preempted").

[10]     The Ninth Circuit very recently extended this principle to medical devices, which are governed by a virtually identical express preemption clause. *See Degelmann v. Advanced Medical Optics, Inc.*, -- F.3d -- 2011 WL 4470641 (9th Cir. Sept. 28, 2011).  In that case, two consumer plaintiffs alleged that the defendant's promotional claim that its MoisturePlus contact lens solution "cleans and disinfects" was false and misleading under California law.  *Id.* at *1.  The Ninth Circuit held that plaintiffs claims were expressly preempted because the defendant's product met FDA's criteria for "disinfecting" lens solutions. *Id.* at **4-5.

16

those benefits – plaque removal – is false.  The doctrines of safe harbor and preemption exist to resolve precisely this conflict.

If plaintiffs or their expert genuinely believe that essential-oil-containing mouthwashes cannot "remove" plaque, they are free to raise that issue with the FDA or petition the agency to revise the Antiplaque Monograph.[11]  But plaintiffs are barred from asking a judge or jury to find that FDA made a mistake or got it wrong.  *See Lori Rubinstein Physical Therapy, Inc. v. PTPN, Inc.*, 148 Cal. App. 4th 1130, 1142 (Cal. Ct. App. 2007) (rejecting plaintiffs' claims that insurance practice permitted by state law was unfair because "[i]t is from the Legislature . . . that plaintiffs must seek their desired remedy); *cf. American Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 145 (S.D.N.Y. 1987) (recognizing that the propriety of an FDA-approved label claim "is a problem to be addressed by the FDA and not by the courts").

## V.     Plaintiffs Have No Claim Against The "Total Care" Name

The Master Complaint alleges that the "Total Care" name is false because the "sole" active ingredient in Listerine Total Care prevents cavities, and a mouthwash that prevents cavities, but not plaque, cannot provide total care.  Since plaintiffs now concede that Listerine Total Care contains antiplaque ingredients, McNeil is entitled to summary judgment on plaintiffs claims against "Total Care" as well.

Plaintiffs also provide no meaningful response to McNeil's argument that the words "total care" are non-actionable puffery.  In their opposition, plaintiffs give the back of the hand to the long line of cases cited by McNeil that hold that vague and laudatory terms such as "total

---

[11]     FDA is not likely to be persuaded by the evidence plaintiffs marshalled in opposition to summary judgment.  Plaintiffs cite a page from a textbook that discusses an outdated 1997 article, and submit a scholarly article by Dr. Daniel Fine.   FDA's Antiplaque Monograph, however, was based on a comprehensive review of the most up-to-date scientific evidence available in 2003, and plaintiffs' characterization of Dr. Fine's article is simply inaccurate.  Moreover, plaintiffs' expert Dr. Sedghizadeh cites no evidence or scientific literature whatsoever to support his opinion that essential-oil-containing mouthwashes are incapable of removing plaque.

care" are not actionable. Plaintiffs, however, cite no contrary authorities, and they fail to explain why the Court should entirely disregard the standards that courts have applied in puffery cases.

Rather than meet McNeil's arguments head on, plaintiffs argue that it is unlawful in California to name the product "Total Care" and sell it for a higher price than Listerine Antiseptic. Pls. S.J. Opp. at 13. This argument makes no sense. Plaintiffs concede that Listerine Total Care contains sodium fluoride and helps prevent cavities, whereas Listerine Antiseptic does not. None of the California cases that plaintiffs cite hold, or even suggest, that it is unlawful to charge more for a product that indisputably does more.[12] Nor is it illegal in California (or any other state) to give a product that contains a different active ingredient a different name.

## VI. Plaintiffs' Claim Of Implied FDA Approval Is Preempted

In a final attempt to stave off summary judgment, plaintiffs fall back on their allegation that by placing Listerine Total Care into the stream of commerce, McNeil necessarily implied that the product is FDA approved for all the purposes for which it is marketed. Pls. S.J. Opp. at 14. But courts have consistently held that claims of "implied FDA approval" encroach on FDA's exclusive authority to enforce the FDCA. Defs. S.J. Mot. at 18-19 (discussing cases). Only FDA has authority to decide whether a product qualifies as a "drug" and to determine what type of approvals, if any, are necessary for the product to be marketed. Private plaintiffs asserting claims under state law do not.[13]

---

[12]    The cases cited by plaintiffs recognize that in California, plaintiffs who have been deceived into purchasing a premium-priced product that is *identical* to another product on the market may allege a cognizable injury. Here, it is undisputed that Listerine Total Care is superior to Listerine Antiseptic insofar as Listerine Total Care provides an extra cavity prevention benefit.

[13]    Plaintiffs point to the "Drug Facts" panel of the Listerine Total Care label as proof that McNeil has held Listerine Total Care out as a drug. As McNeil explained in its opening brief, Listerine Total Care *is* a drug – specifically, it is an anticavity drug – and, by law, it must carry a "Drug Facts" label. *See* 21 C.F.R. § 201.66.

According to plaintiffs, the cases in which courts have held that claims of implied FDA approval are preempted by the FDCA are "non-binding and irrelevant" because California is "particularly protective of consumers."  Pls. S.J. Opp. at 14.  FDCA preemption, however, does not vary from state to state.  Indeed, it would completely undermine preemption's goal of national uniformity if some states' laws were preempted, but others' were not.

Moreover, FDCA preemption has been applied in California to bar claims of implied FDA approval under the UCL and FAL.  *Epogen and Aranesp Off-Label Marketing and Sales Practices Litig.*, 2009 WL 1703285, at *5 (C.D. Cal. 2009); *Summit Tech., Inc. v. High-Line Medical Instruments, Co.*, 933 F. Supp. 918, 932-34, 943 & n.21 (C.D. Cal. 1996).  Plaintiffs make no attempt to distinguish the *Epogen* case, and their opposition rests on the fact that the decision is unpublished.  This Court, however, assuredly can rely on *Epogen* and apply its reasoning because other courts – in California – have already done so.  *See Goldsmith v. Allergan, Inc.*, 2011 WL 147714, at *3 (C.D. Cal. Jan. 13, 2011) (relying on *Epogen* and holding that plaintiffs' UCL and FAL claims were preempted by the FDCA).

Plaintiffs' discussion of the *Summit Tech* case is also unpersuasive.  They quote *Summit Tech* for the proposition that "[u]nder California law, any unlawful business practice, including violations of laws for which there is no direct private right of action, may be redressed by a private action under § 17200."  Pls. S.J. Opp. at 15.  Plaintiffs neglect to mention, however, that the court accompanied this sentence with a footnote (fn. 21):  "This is true _unless_ federal law preempts such an action. Thus, a Plaintiff may _not_ bring a § 17200 claim that is, in fact, an attempt to state a claim under the federal FDCA."[14]  *Summit Tech., Inc.*, 933 F. Supp. at 943

---

[14]  The District Court in *Summit Tech* also issued a prior ruling, which dismissed the plaintiff's original complaint outright as an impermissible "attempt to state a private cause of action under the federal FDCA."  *Summit Tech., Inc. v. High-Line Medical Instruments, Co.*, 922 F. Supp. 299, 316 (C.D. Cal. 1996).

Case 0:11-md-02210-WPD   Document 108   Entered on FLSD Docket 10/25/2011   Page 20 of 21

n.21. Contrary to plaintiffs' contention, the holding of *Summit Tech* does not therefore "agree[]" with plaintiffs." Pls. S.J. Opp. at 15.

Plaintiffs also give a distorted explanation of this Court's ruling on McNeil's motion to dismiss the *Pelkey* action. While plaintiffs accurately note that the Court denied McNeil's motion and found that Pelkey had alleged a viable claims under Florida law, they never acknowledge that the Court also granted McNeil's motion, in part, and dismissed Pelkey's misbranding claims because "the FDCA does not create a private right of action." *Pelkey v. McNeil Consumer Healthcare*, 2011 WL 677424, at *4 (S.D. Fla. Feb. 16, 2011). The Court should reach the same conclusion here and reject plaintiffs' claims of implied FDA approval.

## CONCLUSION

For the reasons stated above and in McNeil's opening brief, McNeil respectfully requests that the Court grant its Motion for Summary Judgment.

Dated:  October 25, 2011

Respectfully submitted,

/s/ Bruce J. Berman

Steven A. Zalesin (*pro hace vice*)
Travis J. Tu (*pro hac vice*)
Ryan Sirianni (*pro hac vice*)
Anthony C. DeCinque  (*pro hac vice*)
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York  10036
Tel:  212-336-2000
Fax:  212-336-2222

*Of Counsel:*
Kathryn A. Meisel, Esq.
Johnson & Johnson

Bruce J. Berman (159280)
e-mail: bberman@carltonfields.com
CARLTON FIELDS, P.A.
100 S.E. Second Street, Suite 4200
Miami, FL 33131
Tel: 305-530-0050
Fax: 305-530-0055

*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 25, 2011, I electronically filed the foregoing document with the Clerk of the Court.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>/s/ Bruce Berman</u>
        Bruce J. Berman

5005274v.1